I. C. DEAL, APPELLANT, *v.* 999 LAKESHORE ASSOCIATION; DAVE KINDRED, INDIVIDUALLY AND DBA KINDRED CONSTRUCTION COMPANY, RESPONDENTS.

No. 9099

June 8, 1978                                          579 P.2d 775

*Bradley & Drendel, Ltd.,* Reno, for Appellant.

*Vargas, Bartlett & Dixon,* and *Peter Durney,* Reno; and *Bennie D. Ferrari,* Incline Village, for Respondents.

## OPINION

By the Court, GUNDERSON, J.:

Following judgments totaling $66,584, and orders denying a new trial and judgment notwithstanding the verdict, I. C. Deal here appeals urging that the district court erred by (1) permitting a condominium association to proceed as the real party in interest; (2) allowing suit as a class action; (3) authorizing amendment to the pleadings; and (4) granting judgment notwithstanding the verdict to a co-defendant. Deal additionally attacks the sufficiency of the evidence supporting the jury's verdict. We find no reversible error, and affirm.

Deal's appeal is from a class action brought by a group of condominium owners for defects in construction and workmanship, and for an accounting of revenues at a development in Incline Village, Nevada. Complaint was filed in the name of "999 Lakeshore Association" (the homeowners' association administering the development), and five individuals as representatives of the class. Ten claims for relief were initially asserted against various defendants. However, two claims were dismissed by summary judgment; four others, severed for separate trial. The remaining causes of action were consolidated for trial against the owner-developer, I. C. Deal, and the contractor, Kindred Construction Company. They involved claims for

negligent construction, breach of express and implied warranties, strict liability for defective manufacture and design of the condominiums, and failure to account to the condominium association for certain revenues.

By leave of the court, 999 Lakeshore filed an amended complaint, asserting alter ego and statutory corporate trustee theories of liability against appellant. Amendment was permitted to proceed against Deal individually, because the corporation which built the project, Incline Properties, Inc., had been dissolved immediately after construction was completed.

At trial the jury returned the following verdicts: (1) $59,500 against Deal for construction defects; (2) $7,084 against Deal on the accounting claim; and (3) $42,500 against co-defendant Kindred for construction errors. Deal and Kindred thereafter filed separate motions for judgments notwithstanding the verdict or new trial. The district court denied appellant's motions but entered judgment notwithstanding the verdict on behalf of Kindred.

1.   Deal first contends the homeowners' association, 999 Lakeshore, lacked standing to bring suit because it did not own any property interest, and was not damaged by the claimed defects in construction. At least with respect to any claims for construction and design defects, Deal's claim has merit, but does not necessitate reversal in the instant case.

NRCP 17(a) provides: "Every action shall be prosecuted in the name of the real party in interest." In the absence of any express statutory grant to bring suit on behalf of the owners, or a direct ownership interest by the association in a condominium within the development, a condominium management association does not have standing to sue as a real party in interest. *See* Wittington Condominium Apts., Inc. v. Braemer Corp., 313 So.2d 463 (Fla.App. 1975), *see also* Friendly Village Com. Ass'n v. Silva & Hill Const. Co., 107 Cal.Rptr. 123 (Cal.App. 1973). Only the owners of condominiums have standing to sue for construction or design defects to the common areas, since they must eventually bear the costs of assessments made by the association. *Ibid.* Therefore, 999 Lakeshore Association lacked standing to bring any construction claims. However, this defect does not require the judgment to be vacated. In addition to 999 Lakeshore Association, five individuals were named to represent the class. Of the five, three were unit owners with requisite standing to bring suit. *See Wittington,* cited above, *Friendly Village,* cited above. Therefore,

we conclude the joinder of the individual owners in the suit renders the standing issue without merit.[1]

2. Deal next claims there was an insufficient community of interest to permit the claims as a class action. NRCP 23 "requires a plaintiff who would institute a class action to satisfy the preconditions of 23(a), and also show that his action is appropriate under one of the three subdivisions of 23(b)."[2] Johnson v. Travelers Insurance Company, 89 Nev. 467, 471, 515 P.2d 68, 71 (1973). Deal insists the demonstrated community of interest was insufficient for two reasons: (a) the named representatives of the class did not have claims typical of the class as a whole, and (b) the possible defenses varied among the class members.

(a) The suit primarily sought damages for roof leakage,

---

[1]Under these circumstances we need not decide whether the homeowners' association had standing to proceed on the accounting claims.

[2]NRCP 23 provides:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

improper drainage causing beach erosion, and inadequate exterior staining. The development consists of ten buildings with six units per building. Testimony revealed approximately 27 units had severe winter leakage problems over a number of years, primarily due to inadequate flashings in the roof structures. Deal maintains the representatives' claims were not typical, *see* NRCP 23(a)(3), because only three of the five named individual plaintiffs were owners, and they did not have leaking roofs. However, we note that leaks occurred in every one of the ten buildings, and that *all* unit owners were assessed for repairs to the common roof area. Therefore, each of the three owners suffered damage; their claims were typical.

(b) Deal additionally attacks the class action pursuant to NRCP 23(a)(2) and 23(a)(3), by claiming he was unable to present effectively differing defenses as to different class members. Specifically, he insists some classmen were not entitled to claim warranty protection as they were not in privity with appellant; the strict liability claim was not applicable to all (some classmen were subsequent purchasers who took with notice of defects); and some classmen were contributorily negligent. Deal therefore contends that questions of law and fact did not predominate as.questions common·to the entire class action. *See* NRCP 23(a)(2) and 23(b)(3).

Authority reveals, however, that the determination to use the class action is a discretionary function wherein the district court must pragmatically determine whether it is better to proceed as a single action, or many individual actions in order to redress a single fundamental wrong. *Cf. Johnson,* cited above; Wright & Miller, *Federal Practice and Procedure, Civil,* Vol. 7 § 1764, 613; § 1763, 604; Vol. 7A § 1778, 53 (1977). But in making such a determination, the court must not prejudice the defendant's rights. Deal claims he was prejudiced by the use of the class action procedure, but fails to demonstrate how such prejudice occurred. The jury was instructed upon all theories of liability, but it is impossible to discern from the record which theory of liability was used in rendering the verdict. Accordingly, since we conclude substantial evidence exists to support the verdict based on negligence, Deal's claimed defenses to strict liability and warranty are irrelevant.[3] *See,* Steele v. Vanderslice, 367 P.2d 636 (Ariz. 1961); Clement v. State Reclamation Board, Etc., 220 P.2d 897 (Cal. 1950).

---

[3]Nor will we agree with Deal's claim that, as a matter of law, the condominium owners were contributorily negligent by not climbing onto the roofs and shoveling off snow before it melted and leaked into the units.

Furthermore, Deal offers no authority which would clearly indicate that it was error to proceed with the class action under the facts presented. The district court found: "Considering the practical and economic problem of having each owner substantiate his 1/60 amount of the claimed common damage, and considering the obligation to repair the common roofs, the Court finds that notwithstanding the above objections it was a proper case for a class action." Under these circumstances, we believe the district court made no error by permitting the class action.

3. Deal next contends the "alter ego" theory was not timely pleaded, and the amended complaint does not relate back so as to avoid the statute of limitations. Resolution of this issue is dependent upon interpretation of NRCP 15(c), which provides: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Deal does not claim error in the amendment procedure itself. Instead, he insists the alter ego theory of liability does not arise out of the conduct, transaction, or occurrence set forth in the original pleading, and thus does not relate back, and is barred by the statute of limitations.

The record reveals the original complaint was filed on November 27, 1970, some two years after the last unit in the development was sold and the first leaks occurred. The complaint was captioned as "Irving C. Deal, individually, and doing business as . . . Incline Properties, Inc., a corporation." Although this by itself may not have notified appellant as to the exact theory of liability upon which he ultimately was held liable, the pleadings generally gave fair notice of the fact situation from which the claim for individual liability arose. If a party has notice of the institution of the action, and is not misled to his prejudice, amendment should relate back. *Cf.* Servatius v. United Resort Hotels, 85 Nev. 371, 455 P.2d 621 (1969); *see also 3 Moore's Federal Practice,* ¶ 15.15 (1977).

There also exists substantial evidence to support the jury's verdict subjecting Deal to individual liability based upon the alter ego doctrine. In Frank McCleary Cattle Co. v. Sewell, 73 Nev. 279, 282, 317 P.2d 957, 959 (1957), the following criteria were delineated for the establishment of alter ego liability:

(1) The corporation must be influenced and governed by the person asserted to be its alter ego. (2) There must be

such unity of interest and ownership that one is insepa-
rable from the other; and (3) The facts must be such that
adherence to the fiction of separate entity would, under
the circumstances, sanction a fraud or promote injustice.
'It is not necessary that the plaintiff prove actual fraud. It
is enough if the recognition of two entities as separate
would result in injustice.'

The record reveals Deal controlled and supervised all corpo-
rate activities of the development corporation, Incline Proper-
ties, Inc. He entermixed his business activity with the
corporation; never held a board of directors' meeting, even
though he was on the board; capitalized the multimillion dollar
corporation with $1,000; was the effective controlling stock-
holder; managed the affairs of the corporation; and took all of
the corporate assets after liquidation. Testimony also reveals
some purchasers of the condominiums relied on Deal's reputa-
tion in buying their units. Under these facts the jury was justi-
fied in disregarding the corporate entity and finding appellant
the alter ego of Incline Properties, Inc.[4]

4.    Deal additionally contests the district court's grant of a
judgment notwithstanding the verdict to co-defendant Kindred
Construction Company. Deal lacks standing to raise this issue
on appeal, because he is not the aggrieved party. *See* NRAP
3A(a). The verdict affecting Kindred for $42,500 was against
him individually. Deal never made any claim for indemnity,
subrogation, or set-off against Kindred. If any party had the
right to appeal the district court's judgment setting aside the
verdict, it was the homeowners who lost $42,500 by the court's
action. They are apparently content with their judgments
against Deal.

5.    Finally, we conclude that the verdict on the accounting
claim was supported by substantial evidence. Testimony
reveals Deal's corporation charged $6,060 for ''auditing'' serv-
ices in managing the association before it was turned over to
the homeowners and 999 Lakeshore. The corporation also
withheld $1,024 for rental revenues without offering valid justi-
fication (Deal claimed it was a bookkeeping error). The jury

---

[4]Deal has also raised the identical issues with regard to amendment of the
pleadings, relation back, and the statute of limitations with regard to statutory
trustee liability under NRS 78.585(1), NRS 78.590(1), and NRS 78.595. These
issues need not be decided. As noted previously, it is impossible to determine
from the record the theory upon which the jury fixed individual liability (alter
ego or statutory trustee). Since the evidence supports the verdict based upon
alter ego liability, other issues are moot.

was entitled to find that the auditing fees were unreasonable and unauthorized, and hold Deal responsible for the unpaid revenues.

The judgment of district court is therefore affirmed.

BATJER, C. J., and MOWBRAY and THOMPSON, JJ., and FONDI, D. J.,[5] concur.