JAMES D. COLFER AND DEANNA COLFER, HUSBAND AND WIFE, AND SOUTHWEST BUILDERS & DEVELOPMENT, INC., A NEVADA CORPORATION, APPELLANTS, v. ROBERT G. HARMON AND BARBARA A. HARMON, RESPONDENTS.

No. 22187

May 14, 1992                    832 P.2d 383

*Anderson, Pearl, Hardesty, Lyle, Murphy & Stone,* Reno, for Appellants.

*Woodburn & Wedge* and *William E. Peterson,* Reno, for Respondents.

## OPINION

*Per Curiam:*

The parties are adjoining property owners. Appellants James Colfer, Deanna Colfer and Southwest Builders & Development, Inc.[1] ("Colfers") tore down the fence of respondents Robert and Barbara Harmon ("Harmons") and built a new fence. The Harmons sued for trespass. The Colfers counterclaimed, alleging that several of the Harmons' structures encroached on their property. The district court found that the Harmons' fence was located entirely on their own property and that, consequently, the Colfers trespassed when they tore it down. The district court also found in favor of the Harmons on the Colfers' counterclaim. For the reasons discussed herein, we reverse the judgment and remand with instructions that the district court enter judgment in favor of the Colfers on their counterclaim.

### FACTS

Mr. Harmon's uncle originally owned the parties' properties, consisting of a north and a south parcel. In 1983, the Harmons became the owners of the north parcel and hired Barry Hickerson ("Hickerson"), a licensed surveyor, to establish the boundary between the north and south parcels. This survey was recorded in the office of the Washoe County Recorder. Hickerson staked the

---

[1]James and Deanna Colfer are the sole owners of this company.

boundary line. Approximately nine months later, the Harmons' fence was built.

In 1985, the Colfers purchased the south parcel. They intended to construct a condominium project on their property. Neighboring property owners, including the Harmons, raised objections to the proposed project. The City of Reno therefore conditioned its approval of the project on the construction of a crash-barrier fence along the property line separating the Harmons' and the Colfers' properties.

During the construction of the condominium project, the Colfers hired Osgood Engineering to locate the corners of their property. Based on Hickerson's recorded survey, Osgood Engineering located the boundary line between the parties' properties. Osgood Engineering discovered that the Harmons' fence encroached on the Colfers' property and that the Harmons had several other structures, two brick corner posts and a brick wall, which encroached on the Colfers' property.

Scott Learey (Learey) and Daryl Anderson (Anderson), two carpenters who were working on the condominium project, surveyed the location of the Harmons' fence with respect to the boundary line. They each "shot the line" several times. They discovered that the Harmons' fence encroached on the Colfers' property from two to six inches. They also discovered that the fence posts had cement footings which were over two feet in diameter. These footings encroached on the Colfers' property by up to two feet. Learey and Anderson removed the fence boards, leaving the fence posts in place. They then documented the encroaching fence posts through a series of pictures, depicting the boundary line, the fence posts and several measuring devices.

Learey showed Mr. Harmon the encroachments. Mr. Harmon told Learey that he could cut the encroaching cement footings. Learey and Anderson broke some of the cement footings, but those posts fell over as a result. Mr. Harmon denied the Colfers' request to remove the fence. Thereafter, however, the Colfers removed the remaining encroaching fence posts. The Colfers built the required crash-barrier fence. The new fence was constructed entirely on the Colfers' property. The Harmons sued the Colfers for trespass.

## DISCUSSION

### The Harmons' trespass claim

The Colfers contend that the evidence does not support a finding that they trespassed upon the Harmons' property. This court will not overturn a trial court's findings of fact if supported

by substantial evidence. *Pandelis Constr. Co. v. Jones-Viking Assoc.*, 103 Nev. 129, 130, 734 P.2d 1236, 1237 (1987). However, if upon all the evidence, "it is clear that a wrong conclusion has been reached, the judgment will be reversed." *Ewing v. Bissell*, 105 Nev. 488, 491, 777 P.2d 1320, 1323 (1989). We conclude that the district court clearly reached the wrong conclusion. We therefore reverse the judgment.

The Harmons relied on Hickerson's and Mr. Harmon's testimony to prove their case. Yet Hickerson never surveyed the Harmons' fence in relation to the boundary; he surveyed and staked the parties' boundary line. Hickerson admitted that he could not testify as to the location of the fence because he had not surveyed it in relation to the boundary line. Consequently, the Harmons' only evidence indicating the location of their fence was Mr. Harmon's testimony. He testified that his fence was built entirely within Hickerson's survey stakes. However, the fence was built nine months after Hickerson staked the boundary, and the stakes were located in an area heavily trafficked by walkers.

The district court did not rely solely on the foregoing evidence. Instead, the district court found that the Colfers willfully destroyed evidence—the Harmons' fence—and that, as a result, an adverse presumption should be applied against them to conclude that the Harmons' fence did not encroach on the Colfers' property. "[E]ven where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Fire Ins. Exchange v. Zenith Radio Corp.*, 103 Nev. 648, 651, 747 P.2d 911, 914 (1987). In *Zenith,* this court alluded to the possible remedy available for "spoliation" of evidence, namely, that an adverse presumption be applied. *Id.* at 652, 747 P.2d at 914. Pursuant to NRS 47.250(3), there is a *rebuttable* presumption that "evidence willfully suppressed would be adverse if produced." (Emphasis added.)

Although the district court properly applied this presumption, we conclude that the Colfers presented sufficient evidence to rebut the presumption. First, in locating the corners of the Colfers' property, Osgood Engineering discovered that the Harmons' fence encroached on the Colfers' property. Secondly, Learey and Anderson each surveyed the location of the Harmons' fence and discovered that it encroached on the Colfers' property. Thirdly and most compelling, the cement footings of the fence posts were at least two feet in diameter. Because the parties were disputing over two to six inches of property, these footings obviously encroached on the Colfers' property. In fact, the Harmons never addressed this fact. The Colfers both rebutted the adverse presumption and demonstrated that the Harmons' fence encroached

on the Colfers' property. Accordingly, the district court erroneously found that the Harmons' fence was located entirely on their own property and that the Colfers trespassed in taking down said fence.

### The Colfers' counterclaim

The Colfers also argue that the district court erred in finding that the Harmons' brick wall did not encroach on their property.[2] The district court found in favor of the Harmons on this claim because: (1) the Colfers did not own the property and thus lacked standing; (2) the Colfers failed to prove the encroachments; and (3) even if there was an encroachment, it was open, notorious, continuous, adverse and under a claim of right for a period of more than fifteen years. Again, we conclude that the district court's conclusion is clearly erroneous.

After the complaint was filed, the Colfers conveyed their property to Plumas South Condominiums Homeowners Association, which owns all the common property and building structures in fee, reserving to the homeowners only the air space within the walls of their respective units. The Colfers own one unit. We have previously held that only condominium owners have standing to sue for construction or design defects to the common areas. Deal v. 999 Lakeshore Assoc., 94 Nev. 301, 304, 579 P.2d 775, 777 (1978). The Harmons seek to distinguish *Deal* on the fact that the Colfers own only the "air space" inside one condominium in the development. They assert "air space ownership" is distinctly different from most homeowners associations where the homeowners own their units and the underlying ground; here, the homeowners association owns all the ground in fee. In *Deal,* we emphasized that the condominium owners had standing to sue because "they must eventually bear the costs of assessments made by the associations." *Id.* Our holding was not premised on whether the condominium ownership included the common area. We conclude that the Colfers had standing to assert their counterclaim.

The Colfers demonstrated that the brick wall encroached on their property. Both Hickerson and Edward Osgood, a civil engineer and land surveyor, testified that the brick wall so encroached. Moreover, Hickerson's survey map shows the brick wall encroaching approximately four inches. This evidence is uncontroverted.

---

[2]The Colfers also alleged as a counterclaim that the Harmons' sewer line encroached on their property. On appeal, they have only discussed the brick wall. We therefore only address the Colfers' contention as to the brick wall.

Finally, there is no evidence to support the district court's conclusion that the Harmons gained rights to the encroachment by virtue of adverse possession or a prescriptive easement. The Harmons did not show that they had paid property taxes on the subject property. *See* NRS 11.150 (adverse possession is not established unless the possessors of the land have paid all state, county and municipal taxes for the previous five years); *see also* NRS 40.090; Biasi v. Leavitt, 101 Nev. 86, 692 P.2d 1301 (1985). The Harmons also failed to show any evidence of a hostile claim of right for the requisite five years. *See* Wilfon v. Hampel 1985 Trust, 105 Nev. 607, 608, 781 P.2d 769, 770 (1989).

Accordingly, we reverse the judgment in favor of the Harmons and remand with instructions to enter judgment in favor of the Colfers on their counterclaim.