BEAZER HOMES HOLDING CORP., Petitioner, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for THE COUNTY OF CLARK; and THE HONORABLE SUSAN JOHNSON, District Judge, Respondents, and VIEW OF BLACK MOUNTAIN HOMEOWNERS' ASSOCIATION, INC., Real Party in Interest.

No. 57187

December 27, 2012                    291 P.3d 128

*Koeller Nebeker Carlson & Haluck, LLP*, and *Robert C. Carlson* and *Megan K. Dorsey*, Las Vegas, for Petitioner.

*Feinberg Grant Mayfield Kaneda & Litt, LLP*, and *Bruce G. Mayfield, Daniel H. Clifford*, and *Charles M. Litt*, Las Vegas, for Real Party in Interest.

*Thomas & Springberg, P.C.*, and *Andrew J. Thomas*, Las Vegas, for Amicus Curiae Nevada Justice Association.

## OPINION

By the Court, Douglas, J.:

This writ petition arises from construction-defect litigation between a homeowners' association and a developer. In it, the developer challenges the district court's decision to allow the association to proceed in a purely representative capacity without strictly meeting NRCP 23's class action requirements, as set forth in *D.R. Horton v. District Court (First Light II)*, 125 Nev. 449, 215 P.3d 697 (2009). We clarify that, while purely representative actions brought by homeowners' associations are not necessarily precluded by failure to meet NRCP 23's class action prerequisites, the district court is required, if requested by the parties, to thoroughly analyze and document its findings to support alternatives to class action for the case to proceed, such as joinder, consolidation, or some other manner. In doing so, the district court must determine, among other issues, which units represented by the association have constructional defects, that the alternative method to proceed will adequately identify factual and legal similarities between claims and defenses, provide notice to members represented by the association, and confront how claim preclusion issues will be addressed. Accordingly, we grant the petition in part so that the district court in this case can conduct the appropriate analysis.

### FACTS AND PROCEDURAL HISTORY

The developer, petitioner Beazer Homes Holding Corp., helped construct a planned development known as The View of Black Mountain Community in Henderson, Nevada. The View of Black Mountain Community consists of 131 duplex units; the two homes in each unit share a single interior wall, as well as common exterior walls and a common roof and foundation. The homes are separated by an imaginary vertical plane at the center of the building, and the homeowners are individually responsible for maintenance and repair of each home. The Community is governed by real party in interest View of Black Mountain Homeowners' Association,

Inc., a common-interest community association created pursuant to NRS Chapter 116.

Although Black Mountain HOA is expressly excluded from any maintenance or repair obligation pertaining to the individual units, it sued the developers, sellers, and builders of the development, including Beazer Homes, on behalf of the individual homeowners, alleging construction-defect-based claims for breach of implied and express warranties and negligence. Thereafter, Black Mountain HOA filed a motion for the district court to determine that its claims satisfied the class action requirements of NRCP 23, in accordance with this court's decision in *First Light II*, which concluded that homeowners' associations had standing to sue on behalf of their members and indicated that they could proceed if they met class action requirements. 125 Nev. at 458, 215 P.3d at 703. Black Mountain HOA asserted that it met NRCP 23's requirements because it was seeking to remedy defective construction solely of the homes' shared elements—the buildings' exterior walls, windows, doors, and roofs, which it termed "the building envelope." It argued that, despite the units' individual ownership, its suit was no different from the leaking condominium roof claims that were allowed to proceed as a class action in *Deal v. 999 Lakeshore Association*, 94 Nev. 301, 579 P.2d 775 (1978).

Beazer Homes opposed the motion, arguing that Black Mountain HOA failed to meet its burden because it did not identify specific information concerning the alleged defects, such as the defects' possible locations, the number of homes allegedly affected, what caused the alleged defective conditions, the resulting damages, and the requested repairs. Beazer Homes also asserted that no single "building envelope" defect was at issue; rather, there were multiple, distinct defects. It also pointed out that the community was constructed by different owners, developers, and contractors, which implicated different defenses.

After a hearing, the district court concluded that this case was factually distinguishable from *First Light II* because it involved exterior, not interior, defects. Noting that homeowners' associations are expressly permitted to litigate on behalf of their members under NRS 116.3102(1)(d), the district court concluded that Black Mountain HOA did not need to satisfy the requirements of NRCP 23 and thus allowed the action to proceed without conducting a class action analysis.

Beazer Homes now petitions this court for a writ of mandamus or prohibition, claiming that the district court acted arbitrarily and capriciously by refusing to undertake a class action analysis. In its writ petition, Beazer Homes argues that our decision in·*First Light II* requires a homeowners' association to meet NRCP 23's re-

quirements before it may pursue its homeowners' construction-defect claims in a representative capacity. Beazer Homes asks us to direct the district court to analyze the NRCP 23 factors (numerosity, commonality, typicality, and adequacy under NRCP 23(a) and predominance and superiority under NRCP 23(b)(3)) and, based on the outcome of that analysis, to then deny Black Mountain HOA's motion to proceed with its representative claims.

In response, Black Mountain HOA argues that Beazer Homes' interpretation of *First Light II*—requiring common-interest community associations to strictly meet NRCP 23 requirements—unconstitutionally abridges its right to proceed in a representative capacity under NRS 116.3102(1)(d). Instead, Black Mountain HOA insists that the district court properly harmonized NRCP 23 with NRS 116.3102(1)(d) and allowed the action to proceed.[1]

We grant Beazer Homes' petition for writ relief to the extent that we direct the district court to analyze the NRCP 23 factors in this case. In so doing, we take this opportunity to clarify the application of *First Light II* when a homeowners' association seeks to litigate construction-defect claims on behalf of its members under NRS 116.3102(1)(d).

## DISCUSSION

A writ of mandamus may be issued to compel action that the law requires as a duty resulting from an office, trust, or station, or to remedy an arbitrary or capricious exercise of discretion. NRS 34.160; *International Game Tech. v. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). "Prohibition is a proper remedy to restrain a district judge from exercising a judicial function without or in excess of its jurisdiction." *Smith v. District Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991); *see* NRS 34.320. Writs of mandamus and prohibition are extraordinary remedies, and whether a petition for extraordinary relief will be considered is solely within this court's discretion. *See Smith*, 107 Nev. at 677, 818 P.2d at 851. The burden is on the petitioner to demonstrate that extraordinary relief is warranted. *Pan v. Dist. Ct.*, 120 Nev. 222, 228, 88 P.3d 840, 844 (2004).

---

[1]In appropriate circumstances, we will review constitutional issues and arguments not raised below. *Desert Chrysler-Plymouth v. Chrysler Corp.*, 95 Nev. 640, 643-44, 600 P.2d 1189, 1190-91 (1979). However, because we conclude that the parties improperly interpret *First Light II* as necessarily disallowing association-led representative construction-defect actions that do not strictly meet NRCP 23's requirements, we need not reach Black Mountain HOA's constitutional arguments.

We have recognized that "a writ will not issue if the petitioner has a plain, speedy and adequate remedy at law." *Millen v. Dist. Ct.*, 122 Nev. 1245, 1250-51, 148 P.3d 694, 698 (2006); *see* NRS 34.170; NRS 34.330. The ability to challenge an issue in the context of an appeal from a future judgment is generally an adequate and speedy legal remedy such that writ relief is precluded. *D.R. Horton v. Dist. Ct.*, 123 Nev. 468, 474, 168 P.3d 731, 736 (2007). However, we determine in each particular case whether a future appeal is sufficiently adequate and speedy by considering a number of factors, including "the underlying proceedings' status, the types of issues raised in the writ petition, and whether a future appeal will permit this court to meaningfully review the issues presented." *Id.* at 474-75, 168 P.3d at 736.

In this instance, Beazer Homes lacks a plain, speedy, and adequate remedy at law. Beazer Homes' petition raises important issues of law and public policy concerning the ability of common-interest community associations to litigate claims on behalf of their members in a representative capacity. A significant number of similar cases raising these issues are pending throughout Nevada's courts. Since the district court proceedings are merely in the preliminary stages, neither judicial economy nor the parties' interests would be served by awaiting a future appeal. Our consideration of the issues raised in this petition will affect not only the remainder of the substantial litigation below, but also the many other cases pending before both this court and district courts throughout the state. Therefore, we conclude that our consideration of Beazer Homes' writ petition will promote judicial economy, and we elect to exercise our discretion to do so. *Williams v. Dist. Ct.*, 127 Nev. 518, 525, 262 P.3d 360, 365 (2011).

The parties' primary arguments raise legal questions, which we review de novo. *International Game Tech.*, 124 Nev. at 198, 179 P.3d at 559. Both parties agree that Black Mountain HOA must meet the NRCP 23 requirements to proceed with the representative action, but they differ as to what is sufficient to meet those requirements.

*Representative actions under NRS 116.3102(1)(d) and NRCP 23*

Under Nevada law, an action must be commenced by the real party in interest—"one who possesses the right to enforce the claim and has a significant interest in the litigation." *Szilagyi v.*

*Testa*, 99 Nev. 834, 838, 673 P.2d 495, 498 (1983); *see* NRCP 17(a). Due to this limitation, a party generally has standing to assert only its own rights and cannot raise the claims of a third party not before the court. *See Deal*, 94 Nev. at 304, 579 P.2d at 777; *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975). Therefore, we have recognized that, "[i]n the absence of any express statutory grant to bring suit on behalf of the owners, or a direct ownership interest by the association in a condominium within the development, a condominium management association does not have standing to sue as a real party in interest." *Deal*, 94 Nev. at 304, 579 P.2d at 777. Similarly, without statutory authorization, a homeowners' association does not have standing to bring suit on behalf of its members. *See First Light II*, 125 Nev. at 455, 215 P.3d at 701.

In 1991, however, the Nevada Legislature adopted the Uniform Common-Interest Ownership Act. *See* NRS 116.001-.795. This legislation conferred standing on common-interest community associations—including condominium associations and homeowners' associations—to litigate certain matters in their own name on behalf of their members. NRS 116.3102(1) currently provides:

> Except as otherwise provided in this chapter, and subject to the provisions of the declaration, the association:
>
> . . . .
>
> (d) May institute, defend or intervene in litigation or in arbitration, mediation or administrative proceedings in its own name on behalf of itself or two or more units' owners on matters affecting the common-interest community.[2]
>
> . . . .

Accordingly, so long as a common-interest community association is acting on behalf of two or more units' owners, it can represent its members in actions concerning the community. This statute affords the common-interest community association not only the right to come into court, but also the right to obtain relief solely on behalf of its members. *See Friendly Village Com. Ass'n, Inc. v. Silva & Hill Const. Co.*, 107 Cal. Rptr. 123, 125 (Ct. App. 1973) (explaining the difference between capacity to sue and standing concepts). Failure to meet any additional procedural requirements, including NRCP 23's class action requirements, cannot strip a common-interest community association of its standing to proceed on behalf of its members under NRS 116.3102(1)(d). *State v. Connery*, 99 Nev. 343, 345, 661 P.2d 1298, 1300 (1983)

---

[2]Minor changes to NRS 116.3102(1)(d) have been made since 1991, but as they do not alter the substance of the provision, they are not recited here.

(recognizing that procedural rules promulgated under the court's inherent powers may not "abridge, enlarge or modify" substantive rights (quoting NRS 2.120(2))). However, such failure may influence how the case proceeds.

We examined NRS 116.3102(1)(d) in *First Light II* and concluded, consistent with our analysis above, that the plain meaning of that provision confers standing on common-interest community associations to assert their members' claims regarding matters concerning the common-interest community, including claims that affect individual units. *First Light II*, 125 Nev. at 457, 215 P.3d at 702-03 (citing NRS 116.3102(1)(d)). Accordingly, common-interest community associations can bring suit not only to recover damages pertaining to common areas and areas over which they are responsible for maintenance and repair, but also on a purely representative basis.

In concluding that NRS 116.3102(1)(d) permits such a representative action, however, we also recognized that when the common-interest community association is pursuing the individual construction-defect claims of multiple unit owners, the actions "are amenable to the same treatment as class action lawsuits brought by individual homeowners." *First Light II*, 125 Nev. at 459, 215 P.3d at 704. In so recognizing, we held that the district court must conduct a thorough NRCP 23 analysis, *id.*, to determine whether plaintiffs can maintain a class action. Our holding was largely based on practical difficulties in managing sizeable construction-defect cases, on concerns with the use of generalized proof to determine liability and compensation in such cases, and on our acknowledgment in *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 124 P.3d 530 (2005), that due to land's unique nature, " 'as a practical matter, single-family residence constructional defect cases will rarely be appropriate for class action treatment.' " *First Light II*, 125 Nev. at 458, 215 P.3d at 703 (quoting *Shuette*, 121 Nev. at 854, 124 P.3d at 542); *see also Shuette*, 121 Nev. at 856, 124 P.3d at 543 (explaining the difficulties inherent in pursuing most construction-defect claims as a class action).

Other authorities have also acknowledged the similarities between these types of representative actions and class actions. For instance, the commentary to the Restatement (Third) of Property, section 6.11, which mirrors section 3-102 of the Uniform Common Interest Ownership Act, upon which NRS 116.3102 is based, likened the two types of actions, stating "[i]n suits where no common property is involved, the association functions much like the plaintiff in class-action litigation, and questions about the rights and duties between the association and the members with respect

to the suit will normally be determined by the principles used in class-action litigation."[3] Restatement (Third) of Prop.: Servitudes § 6.11 cmt. a (2000), *quoted with approval in First Light II*, 125 Nev. at 458, 215 P.3d at 703. Similarly, in a California Court of Appeal case involving a homeowners' association-led representative action, that court "look[ed] to the essential nature of the . . . action and [found] it to be a class action on behalf of a self-defined class." *Salton City Etc. v. M. Penn Phillips Co.*, 141 Cal. Rptr. 895, 898 (Ct. App. 1977).

Thus, typically, when common-interest community associations bring construction-defect claims on behalf of their members, they will seek to proceed as if the lawsuit were a class action, and evaluating class action requirements and protections will be necessary. Accordingly, in *First Light II*, we stated that when a common-interest community association brings a construction-defect suit on behalf of its members, "a developer may, under *Shuette*, challenge whether the associations' claims are subject to class certification," 125 Nev. at 459, 215 P.3d at 704, and we directed the district court to analyze whether the claims asserted in the case "conform[ed] with class action principles." *Id.* at 460, 215 P.3d at 705. Black Mountain HOA argues that our language here and in other parts of the *First Light II* decision has caused some confusion, leading to the diverse positions taken by the district court and the parties in this case. We now clarify that, notwithstanding any suggestions in *First Light II* to the contrary, failure of a common-interest community association to strictly satisfy the NRCP 23 factors does not automatically result in a failure of the representative action.

Nevertheless, analyzing the factors when requested to do so is necessary for a variety of reasons, and the analysis will help guide both the court and the parties in developing a meaningful and efficient case management plan. In analyzing the factors, district courts are not determining whether the action can proceed; rather, they are determining how the action should proceed, *i.e.*, whether it is treated like a class action, a joinder action, consolidated actions, or in some other manner.

Thus, for example, in examining the numerosity requirement, which questions whether "the members of a proposed class [are] so numerous that separate joinder of each member is impractica-

---

[3]Rights and duties between an association and its members implicate, among other things, NRCP 23(c)(2) (notice and opt-out procedures), NRCP 23(c)(3) (class members included in the judgment), and NRCP 23(e) (governing dismissal and compromise).

ble," *Shuette*, 121 Nev. at 846, 124 P.3d at 537, the court need only determine that the common-interest community association's representative action claim pertains to at least two units' owners; if so, the representative action is permissible and cannot be defeated on the ground that the represented members are insufficiently numerous. *See* NRS 116.3102(1)(d). Nevertheless, evaluating the number of individual homeowners' units involved can help determine whether the case will proceed more like a class action, joinder action, or in some other fashion and how discovery, recovery, and claim preclusion issues should be addressed. *Cf. Salton City*, 141 Cal. Rptr. at 899 (noting that having a readily defined class, such as members of a homeowners' association, may have significant advantages over the typical broad class in other types of class actions).

The commonality requirement, which examines the factual and legal similarities between claims and defenses, *Shuette*, 121 Nev. at 846, 124 P.3d at 537, and the NRCP 23(b)(3) predominance requirement, which questions whether common questions predominate over individualized questions,[4] will affect whether the member "class" is divided into subclasses and, if so, how. They also affect the resolution of generalized proof and other evidentiary questions and influence how trial will proceed. In *First Light II*, we noted that "the district court may classify and distinguish claims that are suitable for class action certification from those requiring individualized proof." 125 Nev. at 459, 215 P.3d at 704. By evaluating the commonality and predominance requirements, the court can best organize the proceedings for the particular circumstances of the case.

Reviewing any concerns with typicality and adequacy, which seek to ensure that the class members are fairly and adequately represented by the plaintiffs, will affect issues regarding notice to the association members and influence how claim preclusion issues should be addressed. *See Salton City*, 141 Cal. Rptr. at 899. As the California court noted, a common-interest community association "is typically the embodiment of a community of interest." *Id.* Although the typicality of the claims pertaining to at least two of the units will generally meet the adequacy requirement, issues

---

[4]Under NRCP 23(b)(3), the class action plaintiff must prove "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is [the] superior [method of adjudicating the case]." Individualized claims for monetary relief are subject to this subsection. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 388 (2011) (discussing the analogous federal rule).

regarding the overall adequacy of representation must be determined by the district court. *Salton City*, 141 Cal. Rptr. at 899-900 (recognizing that, depending on the attendant circumstances, members' authorization to bring suit may or may not provide adequate notice to the "class").

[Headnotes 19-22]

Ultimately, upon a motion to proceed as a class action, the district court must "thoroughly analyze NRCP 23's requirements and document its findings." *First Light II*, 125 Nev. at 459, 215 P.3d at 704. District courts are "vested with ample authority to decide to what extent, if any, ordinary class action requirements should be modified to suit the case." *Salton City*, 141 Cal. Rptr. at 900. If the association meets all of NRCP 23's requirements, it may then proceed with the litigation in a class action format. If not, the district court must determine an alternative for the action to proceed such as a joinder action, consolidated action, or in some other manner. In doing so, the district court shall analyze and document its findings to show that the alternative method to proceed will adequately identify factual and legal similarities between claims and defenses, provide notice to members represented by the association, and confront how claim preclusion issues will be addressed. In this, the district court can then fashion an appropriate alternative case management plan to efficiently and effectively resolve the case. Regardless, the court retains control over the action and has flexibility to make appropriate orders. *See* NRCP 23(d).

*The district court abused its discretion in granting Black Mountain HOA's motion for declaratory relief without analyzing the NRCP 23 requirements*

In this case, the district court concluded that Black Mountain HOA had standing under NRS 116.3102(1)(d) and therefore, did not have to demonstrate it met NRCP 23's requirements. As explained above, NRS 116.3102(1)(d) standing does not obviate the need to evaluate the NRCP 23 requirements. Rather, NRCP 23's requirements must be examined upon request, and if Black Mountain HOA wishes to litigate its members' claims as a class action, it must demonstrate that it meets those requirements or provide an alternative method for doing so that achieves the objectives embodied in NRCP 23.[5] Accordingly, the district court acted arbi-

---

[5]To develop a meaningful case management plan when addressing the NRCP 23 motion below, Black Mountain HOA must reveal the alleged construction defects in sufficient detail to support the claims asserted. Merely contending that all of the claims affect the "building envelope" addresses only part of the

trarily and capriciously by failing to conduct a full and proper analysis under NRCP 23.

## CONCLUSION

Because the district court erred in failing to conduct an NRCP 23 analysis, we grant the writ petition in part and direct the clerk of this court to issue a writ of mandamus instructing the district court to conduct a proper NRCP 23 analysis, and we deny Beazer Homes' petition as it pertains to a writ of prohibition. We also decline Beazer Homes' request to direct the district court to deny Black Mountain HOA's motion. The district court is in the best position to analyze the facts and circumstances of this case and to determine the method by which the case can proceed.

CHERRY, C.J., and SAITTA, GIBBONS, PICKERING, HARDESTY, and PARRAGUIRRE, JJ., concur.

---

necessary analysis and is inadequate, based on the discussion above, to inform the court and the defendants of the nature of the claims in a way that would enable the litigation to proceed effectively.