**130 Nev., Advance Opinion 86**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

OXBOW CONSTRUCTION, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ALLAN R. EARL, DISTRICT JUDGE,
Respondents,
and
THE REGENT AT TOWN CENTRE
HOMEOWNERS' ASSOCIATION, A
NEVADA NONPROFIT
CORPORATION,
Real Party in Interest.

No. 61558

FILED

OCT 16 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

THE REGENT AT TOWN CENTRE
HOMEOWNERS' ASSOCIATION, A
NEVADA NONPROFIT
CORPORATION,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
ALLAN R. EARL,
Respondents,
and
OXBOW CONSTRUCTION, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Real Party in Interest.

No. 61941

14-34365

Consolidated original writ petitions seeking relief from two district court orders in a construction-defect matter.

*Petitions denied.*

Koeller Nebeker Carlson & Haluck, LLP, and Robert C. Carlson, Jr., and Megan K. Dorsey, Las Vegas,
for Oxbow Construction, LLC.

Feinberg Grant Mayfield Kaneda & Litt, LLP, and Bruce Mayfield and Daniel H. Clifford, Las Vegas,
for The Regent at Town Centre Homeowners' Association.

---

BEFORE THE COURT EN BANC.

## OPINION

By the Court, DOUGLAS, J.:

In this opinion, we consider several issues raised by consolidated writ petitions arising out of a construction-defect action. Specifically, we address whether the district court acted arbitrarily or capriciously by failing to perform an NRCP 23 class-action analysis, determining that previously occupied units in a common-interest community do not qualify for NRS Chapter 40 remedies,[1] and allowing claims seeking NRS Chapter 40 remedies to proceed for alleged

---

[1]When using NRS Chapter 40 in this opinion, we refer exclusively to the construction-defect provisions. We also note that while the relevant statutes use the term "constructional defect," we use "construction defect" in this opinion to refer to those statutes.

construction defects in limited common elements assigned to multiple units in a building containing at least one "new residence." We conclude that the district court's order was not arbitrary or capricious, and therefore, we deny both petitions.

## FACTS AND PROCEDURAL HISTORY

These consolidated writ petitions arise from a construction-defect action initiated by The Regent at Town Centre Homeowners' Association against Oxbow Construction, LLC. El Capitan Associates, the original developer of The Regent at Town Centre mixed-use community (Town Centre), hired Oxbow as its general contractor. Town Centre includes 20 buildings containing 274 residential units and 10 commercial units, as well as an office and recreation building. After each building's completion, El Capitan obtained a certificate of occupancy from the Department of Building and Safety so that the building's units could be leased out as apartments.

After Town Centre's completion, El Capitan submitted a condominium plan for the complex, which the City of Las Vegas approved. After this approval, El Capitan entered into an agreement to sell Town Centre to Regent Group II, LLC (Regent II), which recorded Covenants, Conditions and Restrictions (CC&Rs) for Town Centre. As relevant here, section 5.1 of the CC&Rs, entitled "Assigned Limited Common Elements," defines certain elements as limited common elements assigned to a particular unit or units.

Adhering to their agreement, El Capitan transferred titles to Town Centre's units to Regent II in groups over a period of four months.

When Regent II received the final group of titles, lessees occupied between 212 and 246 units in the complex,[2] and multiple buildings contained at least one unoccupied unit. Over a period of nine months, Regent II sold all of its condominiums to individual purchasers. The average lease to sale occupancy of the community's units was 7.7 months, and the average unit age was 11.4 months.

Pursuant to NRS 40.645, the Association, on behalf of itself and the condominium unit-owners, served Oxbow with an NRS Chapter 40 notice, alleging construction defects in exterior walls and openings, entry decks/exterior stairs, interior walls and ceilings, and sloped roofs, among other things. After receiving the notice, Oxbow filed a complaint for declaratory relief in district court seeking a determination that NRS Chapter 40 does not apply to Oxbow because the Town Centre units did not qualify as residences after being rented as apartments. In response, under NRS 116.3102(1)(d), the Association, on behalf of itself and the unit-owners, filed an answer and counterclaims for, inter alia, construction defects. Oxbow then filed a motion to dismiss the Association's counterclaims for construction defects. The district court denied Oxbow's motion, ordering limited discovery to determine which units were occupied before the title transfers from El Capitan to Regent II.

The Association filed its own motion requesting that all units, irrespective of prior occupancy, be declared "new residence[s]" under NRS 40.615 based on their chronological age and the duration of their occupancy. The district court also denied this motion. The Association

---

[2]This number is disputed by the parties.

then filed a second motion, this time seeking a determination that NRS Chapter 40 remedies are available for all common elements, including those contained within "building envelopes."[3] In its opposition to that motion, Oxbow argued that the Association was precluded from bringing a representative action for construction defects in common elements, and that the district court was required to conduct an NRCP 23 class-action analysis to determine whether the Association had standing to bring claims for defects in limited common elements. The district court granted the Association's motion, in part, determining that the Association could seek, on behalf of itself or two or more unit-owners, NRS Chapter 40 remedies for construction defects in the common elements of buildings containing a "new residence."

After that ruling, Oxbow filed a writ petition requesting that this court vacate the district court's order because the district court abused its discretion by failing to conduct an NRCP 23 analysis. The Association filed its own writ petition, asking this court to direct the district court to amend its order denying the Association's initial motion to state that NRS Chapter 40 remedies are available for all 274 condominiums at Town Centre.

---

[3]"Building envelope" is a term of art in construction and "encompasses the entire exterior surface of a building, including walls, doors, and windows, which enclose, or envelop, the interior spaces." Barbara Nadel, FAIA, *21st Century Building Envelope Systems: Merging Innovation with Technology, Sustainability, and Function*, AIA/Architectural Record, Continuing Education Series, August 2006, at 146.

## DISCUSSION

*Writ relief*

A writ of mandamus is available to, among other things, "control an arbitrary or capricious exercise of discretion."[4] *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). When seeking such extraordinary relief, the petitioners bear the burden of demonstrating that an exercise of this court's discretion to that end is warranted. *See Westpark Owners' Ass'n v. Eighth Judicial Dist. Court*, 123 Nev. 349, 356, 167 P.3d 421, 426 (2007); *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 228, 88 P.3d 840, 844 (2004).

Generally, writ relief is available only when there is no "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; *Westpark*, 123 Nev. at 356, 167 P.3d at 426. Because an appeal from a final judgment or order is ordinarily an adequate remedy, *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558; *Westpark*, 123 Nev. at 356, 167 P.3d at 426, in most cases, we decline to exercise our discretion to consider writ petitions challenging interlocutory district court orders. *Smith v. Eighth Judicial Dist. Court*, 113 Nev. 1343, 1344, 950 P.2d 280, 281 (1997). Nevertheless, we will exercise our discretion to consider such writ petitions when "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in

---

[4]Because prohibition is not a proper vehicle to challenge the orders at issue here, we deny each petitioner's alternative requests for writs of prohibition. *See* NRS 34.320 (noting that prohibition relief is available to address proceedings in excess of a tribunal's jurisdiction).

 

favor of granting the petition." *Int'l Game Tech.*, 124 Nev. at 197-98, 179 P.3d at 559.

NRS 40.615 limits NRS Chapter 40 construction-defect remedies for residences to defects in "new residence[s]" or in alterations or additions to existing residences. We have construed "new residence" to mean "a product of original construction that has been unoccupied as a dwelling from the completion of its construction until the point of its *original sale*." *ANSE, Inc. v. Eighth Judicial Dist. Court*, 124 Nev. 862, 872, 192 P.3d 738, 745 (2008); *Westpark*, 123 Nev. at 360, 167 P.3d at 429. The consolidated writ petitions address whether we should broaden our definition of "new residence" under NRS 40.615 and whether we should extend NRS Chapter 40 remedies for construction defects to limited common elements assigned to multiple units in a building containing at least one "new residence." These issues are important questions of law, the resolution of which could cabin the underlying litigation and potentially affect other similarly situated persons living in common-interest communities throughout Nevada. We therefore conclude that sound judicial economy and administration favor our consideration of these important legal issues, and we exercise our discretion to address the consolidated writ petitions. Our review of the questions of law raised by these writ petitions is de novo. *Int'l Game Tech.*, 124 Nev. at 198, 179 P.3d at 559.

*NRCP 23 analysis*

As a threshold matter, Oxbow argues that the district court abused its discretion by allowing the Association to bring a representative construction-defect action on behalf of unit-owners without conducting an NRCP 23 analysis as required by *D.R. Horton, Inc. v. Eighth Judicial District Court (First Light II)*, 125 Nev. 449, 215 P.3d 697 (2009). That

argument, however, conflicts with our decision in *Beazer Homes Holding Corp. v. Eighth Judicial District Court*, 128 Nev. ___, 291 P.3d 128 (2012),[5] where we clarified that when a homeowners' association litigates construction-defect claims on behalf of its members under NRS 116.3102(1)(d), a "[f]ailure to meet any additional procedural requirements, including NRCP 23's class action requirements, cannot strip a common-interest community association of its standing to proceed on behalf of its members . . . ." *Id.* at ___, 291 P.3d at 134. In clarifying *First Light II*, we explained that when a homeowners' association seeks to proceed in a class-action format, the district court must, upon either party's request, analyze NRCP 23's factors to determine how the action should proceed. *Id.* at ___, 291 P.3d at 136.

Here, the Association has standing to bring its construction-defect claims on behalf of itself and unit-owners pursuant to NRS Chapter 116, under *Beazer Homes*. *Id.* And, although Oxbow requested an NRCP

---

[5]We note that *Beazer* was published on December 27, 2012, after the district court had issued the two orders being challenged here. However, because *Beazer* clarified our law, as opposed to changing it, there are no retroactivity concerns here. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96-97 (1993) (stating that after a U.S. Supreme Court ruling concerning federal law is applied to the parties in that case, the Court's ruling must be given full retroactive effect in other cases); *Great N. Ry. Co. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 364 (1932) ("A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward."); *Nunez-Reyes v. Holder*, 646 F.3d 684, 691-92 (9th Cir. 2011) (explaining that an exception to the general rule of giving court rulings retroactive effect includes decisions establishing a new principle of law unrelated to jurisdiction).

23 analysis, the district court was not required to conduct that analysis at this point in the litigation because nothing in the record indicates that the Association sought to proceed as a class action. Accordingly, the district court's refusal to engage in an NRCP 23 analysis was neither arbitrary nor capricious.

*"New residence"*

Next, Oxbow contends that Town Centre's units, having been leased as apartments, are neither residences per NRS 40.630 nor "new" under NRS 40.615, and therefore do not qualify for NRS Chapter 40 remedies. In contrast, the Association claims that the units are residences and that, for purposes of determining whether a residence is new under NRS 40.615, courts should apply a sliding-scale approach that considers factors such as a residence's chronological age and the duration of any occupancy. Before addressing the Association's sliding-scale argument, we must determine whether Town Centre's units are "residence[s]."

In *Westpark*, we concluded that rental apartment units are not "[r]esidence[s]" under NRS 40.630 because "the event conferring 'residence' status on a dwelling is the transfer of title to a home purchaser." 123 Nev. at 358, 167 P.3d at 427-28. In this case, Regent II's filing of CC&Rs converted Town Centre from an apartment complex to a common-interest community, *see* NRS 116.2101, and El Capitan's transfer of all individual Town Centre unit titles to Regent II transformed those units into residences. Thus, Town Centre's condominium units are residences for purposes of NRS Chapter 40.

Having determined that the condominium units are residences under NRS 40.630, we now revisit what "new" means under NRS 40.615. As stated above, "a residence is new for constructional defect purposes if it is a product of original construction that has been unoccupied as a

SUPREME COURT
OF
NEVAOA

(O) 1947A

dwelling from the completion of its construction until the point of its *original sale.*" *ANSE*, 124 Nev. at 872, 192 P.3d at 745; *Westpark*, 123 Nev. at 360, 167 P.3d at 429. When we originally interpreted "new" in *Westpark*, we stated that one of NRS Chapter 40's primary purposes is "to protect the rights of homebuyers by providing a process to hold contractors liable for defective original construction or alterations." 123 Nev. at 359, 167 P.3d at 428. We recognized that this purpose would be defeated if contractors were able to "circumvent liability by using units as 'model homes' or leasing units to 'strawmen' for a period of time before offering them for sale."[6] *Id.* at 359-60, 167 P.3d at 428. Acknowledging that it was "nearly impossible to define in strict chronological terms," we defined "new" in terms of original construction, lack of occupancy, and the point of original sale. *Id.* at 359-60, 167 P.3d at 428-29. Taking this approach, we balanced NRS Chapter 40's remedial purpose with the need for certainty.

With our rationale from *Westpark* in mind, it should come as no surprise that we are unwilling to replace our current definition of "new," which provides certainty for all parties, with the amorphous, sliding-scale test advocated by the Association. Imposing a definition of "new" grounded in chronological terms, whether a construction's age or the duration of any occupancy, is a task more appropriate for the Legislature. *See Renown Health, Inc. v. Vanderford*, 126 Nev. 221, 225, 235 P.3d 614,

---

[6]Based on the average duration of occupation and age of the units at issue, the Association suggests that the persons who leased units at Town Centre before Regent II sold those units were "strawmen." As the Association states in its brief, however, it is not raising that issue before this court; therefore, we will not address it at this time.

616 (2010) ("This court may refuse to decide an issue if it involves policy questions better left to the Legislature."). Accordingly, we reaffirm our definition of "new" as stated in *ANSE* and *Westpark*. Relying on this definition, we conclude that the district court correctly determined that Town Centre units occupied before their original sale cannot be classified as "new" and therefore do not independently qualify for NRS Chapter 40 remedies.

*NRS Chapter 40 remedies for limited common elements assigned to multiple units in a common building containing at least one "new residence"*

The parties next dispute whether the Association may seek construction-defect remedies for limited common elements assigned to multiple units in a common building containing at least one "new residence." Before reaching this issue, however, we find it necessary to clarify the district court's July 5, 2012, order granting the Association's motion to that extent. When a district court's order is unclear, its interpretation is a question of law that we review de novo. *Allstate Ins. Co. v. Thorpe*, 123 Nev. 565, 570, 170 P.3d 989, 992-93 (2007).

In its order, the district court stated that the Association could pursue NRS Chapter 40 remedies for construction defects in the "common elements" of buildings containing at least one previously unoccupied unit; *i.e.*, a "new residence." In this context, it is unclear whether the district court is referring to pure common elements or limited common elements. Although limited common elements are a subset of common elements, *see* NRS 116.059, only the limited common elements assigned to the units in a particular building would be impacted by whether a unit in that building was a "new residence."

By requiring a building to contain a "new residence," the district court impliedly focused on construction defects associated with

units as opposed to pure common elements. That the district court adopted a new rule despite its previous order affirming *Westpark*'s definition of "new" also suggests that it was not addressing defects in or assigned solely to an individual unit. Thus, we conclude that the district court actually meant limited common elements assigned to multiple units in a common building containing at least one previously unoccupied residence.

With this interpretation in mind, we turn to Oxbow's argument that the district court erred by permitting the Association to seek NRS Chapter 40 remedies for construction defects in limited common elements assigned to multiple units in a common building in which at least one unit is a "new residence." Oxbow contends that a construction-defect action cannot be maintained because the assigned limited common elements at issue are appurtenances and must be "new" under NRS 40.615. The Association asserts that NRS 40.615 does not require appurtenances[7] to be "new," but also maintains that it is entitled to pursue NRS Chapter 40 remedies for construction defects in these elements regardless of whether the building in which they are located contains a "new residence" because the limited common elements should

---

[7]While the Association refers to "building envelopes" in its arguments, we decline to incorporate this term into our analysis. We find that it creates unnecessary confusion and has no legal underpinning in NRS Chapters 40 or 116. Additionally, we note that the term is not used in Town Centre's CC&Rs. Accordingly, we clarify the Association's arguments based on the issue presented by our interpretation of the district court's order.

be classified as pure common elements and not as part of the units to which they are assigned.

We review questions of statutory interpretation de novo. *Westpark*, 123 Nev. at 357, 167 P.3d at 426-27. Where a statute is unambiguous, we apply its plain meaning. *Id.* at 357, 167 P.3d at 427. As explained above, a residence must be "new" to qualify for construction-defect remedies. *Id.* at 360, 167 P.3d at 429. However, we have never directly considered whether, as Oxbow argues, an appurtenance must also be "new." NRS 40.615 defines "constructional defect[s]" and provides:

> "Constructional defect" means a defect in the design, construction, manufacture, repair or landscaping of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance and includes, without limitation, the design, construction, manufacture, repair or landscaping of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance . . . .

Thus, in NRS 40.615, "new" only precedes "residence," raising the question of whether it modifies any other elements in the phrase. "The typical way in which syntax would suggest no carryover modification is that a determiner (*a, the, some,* etc.) will be repeated before the second element . . . ." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 148 (2012). Applying this syntactic rule to NRS 40.615, the determiner "a/an" is repeated before each subsequent element; *i.e.*, "a new residence, . . . an alteration of or addition to . . . , or . . . an appurtenance." Accordingly, while "new" modifies "residence," it does not modify "alteration," "addition," or "appurtenance." *See Beazer*, 128 Nev. at ___, 291 P.3d at 134 (noting that homeowners' associations may pursue construction-defect claims for common elements, which are included in the definition of "appurtenance" in NRS 40.605, without

Supreme Court
OF
Nevada

(O) 1947A

13

reference to the common elements being "new"); *Pankopf v. Peterson*, 124 Nev. 43, 47, 175 P.3d 910, 912-13 (2008) (addressing a construction-defect action for an appurtenance without referring to any newness requirement). We therefore conclude that an appurtenance is not required to be "new" under NRS 40.615 to qualify for NRS Chapter 40 remedies. With this conclusion in mind, we must determine whether the assigned limited common elements referred to in the district court's order are a part of the residence, requiring newness, or are appurtenances with no such requirement.

NRS 40.605 states that an appurtenance is "a structure, installation, facility, amenity or other improvement that is appurtenant to or benefits one or more residences, but is not part of the dwelling unit" and "includes . . . common elements and limited common elements other than those described in NRS 116.2102. . . ." Common elements include "all portions of the common-interest community other than the units . . . ."[8] NRS 116.017(1)(a). "'Limited common element' means a portion of the common elements allocated by the declaration or by operation of subsection 2 or 4 of NRS 116.2102 for the exclusive use of one or more but fewer than all of the units." NRS 116.059. While limited common elements include elements found in NRS 116.2102, NRS 40.605 expressly excludes these elements from being appurtenances. Therefore, limited common elements not contained in NRS 116.2102 are appurtenances not

---

[8]A "[u]nit" is "a physical portion of the common-interest community designated for separate ownership . . . ." NRS 116.093.

required to be "new," while those found in NRS 116.2102 are not appurtenances and may or may not be required to be "new."

Generally, NRS 116.2102 assigns certain housing components to an individual unit and others to common elements. Despite these assignments, CC&Rs can assign these components differently. *See generally* NRS 116.2102. Town Centre's CC&Rs adopt NRS 116.2102's provisions, in part. Diverging from NRS 116.2102, parts of section 5.1 of the CC&Rs provide that identified housing components serving more than one unit are not common elements but limited common elements assigned to the units which they serve.[9]

While only indirectly before us, we find it necessary to explain that NRS Chapter 40 remedies for construction defects in limited common elements that are assigned solely to an individual unit and that fall within NRS 116.2102's purview would only be available when the individual unit qualifies as a "new residence." This is because these elements, whether by NRS 116.2102's or the CC&Rs' assignments, are exclusively allocated to the individual residence that they benefit.

However, this is not the case for limited common elements that are assigned to and benefit multiple units in a common building. We now conclude that to pursue NRS Chapter 40 remedies for construction defects in limited common elements assigned to multiple units in a

---

[9]Limited common elements assigned to the units which they serve include, among other things, stairs, stoops, entrances to buildings, exterior surfaces, trim, siding, and doors.

common building, a plaintiff needs only to establish that the building in question contains at least one unit that is a "new residence."[10]

We believe that requiring this minimal nexus to newness in these circumstances is logical, given the apportionment of these assigned limited common elements, and harmonious with NRS Chapter 40's remedial purpose. Allowing the existence of one occupied unit to preclude other "new residence[s]" in the same building from recovering for construction defects assigned to that building would undermine NRS Chapter 40's purpose to "protect the rights of homebuyers by providing a process to hold contractors liable for defective original construction or alterations." *Westpark*, 123 Nev. at 359, 167 P.3d at 428.

Our interpretation of the district court's order permits the Association to pursue NRS Chapter 40 remedies for construction defects in the limited common elements of buildings containing at least one "new residence." This comports with our holding here.

---

[10]We note that section 1.14 of the CC&Rs defines "common elements" to include several components identical to those listed as limited common elements assigned to multiple units under section 5.1 of the CC&Rs. Unlike NRS 116.2102, which allows CC&Rs to alter the categorization of components contained in its provisions, NRS 116.017 does not expressly permit CC&Rs to deviate from its definition of common elements. On remand, the district court must take this into consideration when determining what limited common elements the CC&Rs assign to multiple units in a common building containing at least one previously unoccupied residence.

Accordingly, we conclude that the district court's decision was not an arbitrary or capricious exercise of its discretion, and we therefore deny both writ petitions.

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta