# IN THE SUPREME COURT OF THE STATE OF NEVADA

SILVER BOWL RV RESORT, LLC, A
NEVADA LIMITED LIABILITY
COMPANY,
Appellant,
vs.
TMO CA/NV, LLC, A NEVADA
LIMITED LIABILITY COMPANY; AND
GLOBAL SIGNAL ACQUISITIONS IV,
LLC, A DELAWARE LIMITED
LIABILITY COMPANY,
Respondents.

No. 72881

FILED

SEP 28 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order granting respondents' motion for summary judgment in a contract action and in an action to quiet title. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

*Facts*

Appellant Silver Bowl RV Resort, LLC (Silver Bowl) owned an RV park located in Las Vegas (the Property). In 2002, Silver Bowl entered into a Ground Lease Agreement (GLA) with Cingular Wireless, LLC, wherein Silver Bowl agreed to lease Cingular a portion of the Property for the purpose of constructing, maintaining, and operating a wireless communications tower in return for a monthly payment. Subsequently, Cingular transferred the lease to respondent TMO, and TMO began making monthly payments to Silver Bowl.

In 2005, Silver Bowl entered into a construction loan agreement in order to convert the Property into a residential community. The collateral for the agreement included any and all collateral described in other loan documents, and a deed of trust was incorporated by reference into the agreement as a security instrument. The deed of trust provided that Silver Bowl "absolutely, unconditionally, irrevocably and immediately assign[ed], grant[ed], convey[ed] to [the bank] all the right, title and interest in . . . [e]xisting or future leases . . . and any other written or verbal agreements for the use and occupancy of the Property" as well as in "[r]ents, issues and profits . . . and all rights and claims which [Silver Bowl] may have that in any way pertain to or are on account of the use or occupancy of the whole of any part of the Property." Additionally, the deed of trust stated that "[i]n the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement."[1]

In 2008, Silver Bowl defaulted on the loan. The Federal Deposit Insurance Corporation (FDIC) foreclosed upon nineteen inventory homes, fifty-one vacant lots, and all common areas, including the common area on which the cell tower site was located. The FDIC then obtained all the vacant lots and the common areas at a foreclosure sale and sent demand letters to TMO for payments pursuant to the GLA. TMO placed monthly payments into an escrow account until a determination could be made as to who was entitled to the payments. Subsequently, the FDIC sold the vacant

---

[1]In 2006, Covenants, Conditions, and Restrictions (CC&R) were recorded for the community, and at least one section provided that "[a]ny activities, maintenance obligations, dealings with, or any other contact with the cell phone site was, and remains, the personal property of Silver Bowl."

lots and common areas to DR Horton, and DR Horton executed a grant of easement and quitclaim assignment of lease for the cell tower site to respondent Global Signal Acquisitions IV, LLC (GSA), along with a perpetual easement for the cell tower facility.

Silver Bowl filed the underlying complaint regarding its interest in the cell tower site and moved for partial summary judgment, arguing that the GLA was not a part of the security or collateral on the deed of trust and presented an affidavit of a former bank employee to support its claim. TMO and GSA both countermoved for summary judgment, arguing that the contract was clear on its face and that the parole evidence rule precluded consideration of the bank employee's affidavit. GSA subsequently filed a counterclaim for quiet title and named the residential community's association (the Association) as a party. After the Association executed an Acknowledgment and Disclaimer of Interest in the Property, GSA moved to dismiss without prejudice its claim for quiet title against the Association. The district court denied Silver Bowl's motion for partial summary judgment, finding it had no existing interest in the Property, and granted GSA's counterclaim for quiet title.

*Standard of review*

This court reviews a district court's order granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if the pleadings and all other evidence on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. This court will view the evidence in "a light most favorable to the nonmoving party." *Id.*

*Collateral security for the loan*

Silver Bowl claims that the GLA was not collateral security for the loan. It references the construction loan agreement and argues that the agreement and the deed of trust must be considered together, especially in light of the boilerplate language contained in the deed of trust. Silver Bowl further alleges that the agreement only considered future leases, pointing out that the agreement did not incorporate copies of any leases as part of its exhibits, and thus that the existing GLA was not intended to be part of the loan. Silver Bowl also argues that the language in the deed of trust references only existing *or* future leases, not both, and that the fact Silver Bowl did not provide the bank with copies of certified leases indicates the parties' intent not to include the GLA as collateral security for the loan. Lastly, Silver Bowl asserts that, to the extent interpretations conflict, an ambiguity exists warranting the consideration of the bank employee's affidavit as evidence of the parties' intent.

Considering the evidence in the light most favorable to Silver Bowl, the language is unambiguous that the GLA was collateral security for the loan. While the agreement may not have specifically addressed the GLA, the agreement did provide that collateral for the loan included collateral described in other loan documents, specifically referencing a deed of trust as a security instrument. And the deed of trust clearly contemplated the GLA and included it as collateral security for the loan. That Silver Bowl did not provide certified copies of the GLA does not nullify or void the plain language of the deed of trust.[2]

---

[2]Because we conclude that the deed of trust clearly includes the GLA as collateral security for the loan, we do not consider the admissibility of

Even if this court were to conclude that the GLA was *not* collateral security for the loan, Silver Bowl's claim to a right or interest in the GLA or its proceeds fails. When the FDIC foreclosed on the deed of trust and purchased the Property, it received both the real property and the right to rent or lease any part thereto, including the land that was a part of the GLA, because it took title as previously held by Silver Bowl. *See* NRS 107.080(5) ("Every sale made under the provisions of this section and other sections of this chapter *vests in the purchaser the title of the grantor* and any successors in interest without equity or right of redemption." (emphasis added)). Silver Bowl had no interest in the Property after the foreclosure, and it presents no authority supporting its argument that it was entitled to payments involving the use of real property to which it had no interest. And Silver Bowl cannot lease land in which it has no interest. *See Munroe v. Brower Realty & Mgmt. Co.*, 565 N.E.2d 32, 36 (Ill. App. Ct. 1990) ("Because a lease is a conveyance of a possessory interest in land, it can be granted only by one who has such an interest and cannot be made by a party who has no possessory interest or right in the property."). Accordingly, we find no merit in Silver Bowl's argument that the FDIC's rights after the foreclosure were subject to the GLA.[3]

---

the bank employee's affidavit. *See Kaldi v. Farmers Ins. Exch.*, 117 Nev. 273, 281, 21 P.3d 16, 21 (2001) ("Where a written contract is clear and unambiguous on its face, extraneous evidence cannot be introduced to explain its meaning." (internal quotation marks omitted)).

[3]To the extent Silver Bowl argues that the FDIC failed to perfect its claim to the GLA because it did not file a deficiency claim against Silver Bowl but merely sold to DR Horton via a special warranty deed, the subsequent actions of the FDIC do not affect our analysis, outlined above, that Silver Bowl had no right or interest in the GLA after the foreclosure because the property upon which the GLA relied belonged to the FDIC.

SUPREME COURT
OF
NEVADA

(O) 1947A

Having concluded that Silver Bowl has no interest in the Property or the GLA, its claims for declaratory relief necessarily must fail because declaratory-relief claims require the party seeking relief to "have a legal interest in the controversy, that is to say a legally protectable interest." *Nev. Mgmt. Co. v. Jack*, 75 Nev. 232, 235, 338 P.2d 71, 73 (1959). Additionally, Silver Bowl's claim for breach of contract and for injunctive relief related to the rent payments must also fail because Silver Bowl has no interest in the GLA or the rent payments. Accordingly, summary judgment as to Silver Bowl's four claims was appropriate.[4]

*Standing*

---

[4]To the extent Silver Bowl argues that the FDIC could not foreclose upon the common areas of the Property because they had been released from the deed of trust and transferred to the Association, Silver Bowl lacks standing to make this argument on behalf of the Association and the record does not support the argument that the common areas had been transferred to the Association at the time of the foreclosure. *See Beazer Homes Holding Corp. v. Eighth Judicial Dist. Court*, 128 Nev. 723, 730-31, 291 P.3d 128, 133 (2012) ("[A]n action must be commenced by the real party in interest—one who possesses the right to enforce the claim and has a significant interest in the litigation. Due to this limitation, a party generally has standing to assert only its own rights and cannot raise the claims of a third party not before the court." (internal quotation marks omitted)). Additionally, Silver Bowl contends the CC&R created a valid easement for Silver Bowl to lease the land under the GLA, but Silver Bowl's interest in that property was foreclosed upon by the FDIC. Silver Bowl presents no authority supporting either its argument that the CC&R, recorded after the deed of trust, can contain covenants that circumvent duly assigned collateral security or its argument that it could retain a valid easement to property that had already been foreclosed upon. Thus, we need not consider this argument. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (noting that an appellate court need not consider issues that are not cogently argued or supported by relevant authority).

Silver Bowl argues that GSA lacked standing to seek quiet title because the grant of easement by DR Horton to GSA violated both Nevada law and the CC&R. It does not appear that Silver Bowl has standing to make this challenge: it has no interest in the subject property conveyed by DR Horton to GSA and it does not appear to own any property subject to the CC&R. *See Beazer*, 128 Nev. at 730-31, 291 P.3d at, 133 (2012). Moreover, the record before this court demonstrates that summary judgment quieting title in the Association's favor subject to GSA's easement was appropriate.

*Conclusion*

Having considered Silver Bowl's argument and concluded that summary judgment was appropriately granted, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Cherry

_____, J.
Parraguirre

_____, J.
Stiglich

cc:    Hon. Elizabeth Goff Gonzalez, Chief Judge
Dana Jonathon Nitz, Settlement Judge
Law Office of Timothy P. Thomas, LLC
Gerrard Cox & Larsen
Gordon & Rees Scully Mansukhani LLP
Eighth District Court Clerk

