Jany. 2, 1906.

———

FORDERER v. SCHMIDT et al.

(Circuit Court of Appeals, Ninth Circuit. May 13, 1907.)

No. 1,399.

TENDER—TENDER BY STRANGER—EFFECT OF RATIFICATION.

A tender to a part owner of a mining claim of a sum which he claimed to be due him for assessment work from a co-tenant, made by a friend of the latter for the purpose of preventing a forfeiture of his rights under the statute, although not authorized at the time, is valid and effective, where it was ratified at once when made known to the person in whose behalf it was made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Tender, § 8.]

In Error to the District Court of the United States for the Second Division of the District of Alaska.

The plaintiff in error brought ejectment to recover from co-tenants holding adversely the possession of the undivided one-half of the "Sequoia" Beach Placer Mining Claim, situated on Ophir creek, Alaska, and damages for the unlawful withholding thereof. The answer alleged the failure of the plaintiff in error to contribute his share of the assessment work on the claim for the year 1901, and alleged that his co-tenant, the defendant in error, Schmidt, performed said work and thereafter acquired the interest of the plaintiff in error in said claim, under the provisions of section 2324 of the Revised Statutes, by publishing the notice provided for in that section. The reply alleged that there was a contractual and fiduciary relation between the plaintiff in error and

Schmidt, such as to estop the latter to claim the forfeiture; and alleged further that the plaintiff in error had made advances by way of outfitting said Schmidt, and by a personal loan to him of $100, which should be held to be ample contribution toward such assessment work; that Schmidt, during the year 1901, extracted from the claim gold dust exceeding in value $300; that before the alleged forfeiture he had extracted other large amounts from said claim, for none of which he had accounted to the plaintiff in error, and, therefore, should not be allowed to declare a forfeiture; and that a friend of the plaintiff in error in due time tendered to Schmidt, on behalf of the plaintiff in error, the amount claimed in the notice of forfeiture, which tender was refused, and that the said tender was duly ratified by the plaintiff in error. The evidence was that on November 2, 1900, at San Francisco, Schmidt, who was the sole owner of the Sequoia mining claim, sold and conveyed to the plaintiff in error an undivided one-half interest in that claim and certain other mining claims in Alaska, for the consideration of $4,000, of which $2,000 was to be paid in cash and the remainder was to be expended by the plaintiff in error in the spring of 1901 in purchasing an outfit for said Schmidt, all of which was done; that when Schmidt went to Alaska in the spring of 1901 the plaintiff in error sent with him his son, and the latter with Schmidt jointly used the outfit in working upon some of the claims, but not upon the Sequoia; that in September, 1901, the son of plaintiff in error left Alaska and did not again return, and that at that time Schmidt owed the plaintiff in error $100 for borrowed money. Schmidt testified that the son of the plaintiff in error, while he was in Alaska, acted as his father's agent, and that when he left Schmidt paid to the son the $100 owing to the father; that at that time no arrangement had been made about the assessment work on the Sequoia claim for the year 1901; that, after the son left, Schmidt went on mining for the interest of the plaintiff in error as well as for his own, but that he had no understanding with plaintiff in error or his son in regard to representing the claim in which the former had an interest; that he, Schmidt, did all the representative work on the Sequoia for the year 1901, and took from the claim between four and five hundred dollars, a sum insufficient to cover the expenses of the work done for that year. Adolph Nieman testified that on or about October 12, 1902, while Schmidt's notice of forfeiture was being published, one George James gave the witness $200 and told him to tender it to Schmidt, saying that Schmidt was trying to do the plaintiff in error out of the claim. He testified that he made the tender, saying to Schmidt: "There is two hundred dollars. That is the money for the man you have been advertising in the 'Council City News' for the claims for assessment work;" and that Schmidt refused the tender on the ground that it was not authorized by the plaintiff in error. This testimony was not disputed. The plaintiff in error testified that in the early part of the year 1903, and as soon as he heard of the act of his friend and agent, he ratified and confirmed it. The notice of forfeiture set forth the fact that Schmidt had expended $200 in labor in performing assessment work for the years 1901 and 1902 upon the Sequoia claim. It was admitted that publication of the notice was premature for the assessment work of 1902, but it was contended by the defendants in error that it was a sufficient notice on which to base a forfeiture for the nonpayment of the assessment work of 1901. Concerning the effect of the tender, the court instructed the jury: "That such a tender would not be valid in law unless made either by Forderer himself, or by an agent duly authorized by Forderer to make such tender. And you are further instructed that, if Schmidt made objection at the time of the tender by Nieman to the validity of the tender on the ground that it was not made by a duly authorized person in behalf of Forderer, the tender by Nieman or James would not avail Forderer in this action to continue his ownership in said claim." The jury returned a verdict for the defendants in error, and judgment was thereupon rendered.

For former opinion, see 146 Fed. 480.

G. J. Lomen and Charles E. Naylor, for plaintiff in error.

Charles Page, Edward J. McCutchen, W. S. Burnett, Gordon Hall, Albert Fink, and Thomas H. Breeze, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Error is assigned to the instructions given by the court on the subject of the tender. In 2 Parsons on Contracts (9th Ed.) 639, it is said of a tender:

"It need not be made by the defendant personally. If made by a third person at his request it is sufficient, and, if made by a stranger without his knowledge or request, it seems that a subsequent assent of the debtor would operate as a ratification and make the tender good."

The language of the text is supported by reference to Harding v. Davies, 2 C. & P. 78, Read v. Goldring, 2 M. & S. 86, and Kinkaid v. Brunswick, 11 Me. 188. In the case last cited the court said:

"It is a well-settled principle of law that a tender may be made as well by an authorized agent as by the debtor himself; and it is also a plain principle that a ratification of an act done without authority is equivalent to a previous authority. No authorities need be cited in support of either of these principles. Admitting that Snow was not authorized to make the tender, still his act in making it has been distinctly ratified and sanctioned by the school district in placing their defense on this tender by Snow. This is an adoption of his act as their own."

While the general doctrine is announced in several decisions that a tender by a mere stranger is not valid, and that to make it effectual it must appear that at the time when it was made the person making it had the right, as principal or agent, to tender the payment of the debt, we find no case which holds that the act of a stranger in making the tender may not be rendered valid by subsequent timely ratification by him in whose interest it was made, and the authorities above cited hold to the contrary. While the rule above quoted may not be applicable to all cases, no reason is perceived why it should not apply to a case such as the present one, where the tender was of a simple debt, and was made for the purpose of avoiding forfeiture under a statutory proceeding instituted by one co-tenant against another co-tenant. It could make no difference to Schmidt who paid the debt. The tender did not involve the acquisition of any right, privilege, or property by the person making it, or the surrender of any property held in pledge or otherwise by the person to whom it was made. On principle the case is similar to Bennett v. Hunter, 9 Wall. 326, 19 L. Ed. 672, Tracy v. Irwin, 18 Wall. 549, 21 L. Ed. 786, and Atwood v. Weems, 99 U. S. 183, 25 L. Ed. 471, cases which arose under the act of August 5, 1861, to provide increased revenue on imports, etc., and the act of June 7, 1862, "for the collection of direct taxes in insurrectionary districts in the United States," in which it was enacted that the title "of, in and to each and every piece and parcel of land upon which said tax has not been paid as above provided, shall thereupon become forfeited to the United States." It was insisted that the right of payment of such a tax was limited to the actual owner. The court said:

"But to whom did the right to make this payment belong? The obvious answer is, to the owner, either acting in person or through some friend or agent,

compensated or uncompensated. The terms of the act are that the owner or owners may pay; and it is familiar law that acts done by one in behalf of another are valid if ratified, either expressly or by implication, and that such ratification will be presumed in furtherance of justice."

In the light of these authorities, we are of the opinion that the tender of payment on behalf of the plaintiff in error, if ratified by him, was sufficient to relieve his interest in the mining claim from forfeiture, that the court below should have so instructed the jury, and that the instruction given was error, for which the judgment must be reversed and the cause remanded for a new trial.