[No. 26168-1-I.   Division One.   August 5, 1991.]

NORTH COAST MORTGAGE INVESTMENT, INC., *Appellant,* v.
ROY R. DUNNING, ET AL, *Respondents.*

*Jordan M. Hecker* and *Longley & Hecker,* for appellant.

*Harrison H. deMers* and *deMers & Associates,* for respondents.

AGID, J. — North Coast Mortgage Investment, Inc. (NCMI) and its principals appeal the dismissal of their complaint to set aside a real estate contract forfeiture and

the entry of a judgment against them for attorney fees. We affirm in part and reverse in part.

In 1976, Roy and Vendella Dunning conveyed real property to Mark and Virginia Stange under a real estate contract. In August 1988, the Stanges quitclaimed their interest in the property to U.S. Bank of Washington (U.S. Bank). U.S. Bank discovered environmental violations on the property and decided not to make the contract payments. Consequently, in May 1989, the Dunnings commenced a forfeiture proceeding under RCW 61.30. Pursuant to the notice of intent to forfeit, the final date for U.S. Bank to cure the default and avoid a forfeiture was August 21, 1989.

The forfeiture came to the attention of Tim Tweet, president of NCMI and T&R Property Management, Inc. Through his corporations, Tweet invested in financially distressed properties. Tweet sought to acquire U.S. Bank's property and, about 1 week before the August 21 cure date, U.S. Bank agreed to sell it to him. Tweet and the bank reached a final oral agreement 2 days before the cure date.

The cure date arrived before any written documents evidencing Tweet's and the bank's oral agreement were prepared. Nevertheless, on August 21, Tweet called the U.S. Bank official with whom he had been working, Len Aspinwall, and advised him that he planned to cure the default. Aspinwall told him "that was his business and risk."

Tweet's brother, Lonnie Tweet (Lonnie), then attempted to cure the default by tendering the cure amount to the Dunnings' attorney, Robert Verzani. Verzani refused Lonnie's tender. Although Lonnie's and Verzani's testimony concerning their meeting differs, it is evident that Verzani told Lonnie that he would not accept tender from him unless Lonnie had a deed to the subject property or some other document indicating that U.S. Bank had authorized him to cure the default in its behalf.

Lonnie left Verzani's office and called Tweet to tell him that Verzani had rejected his cure. Tweet called his attorney, who faxed Verzani a letter which said in relevant part:

> I understand that U.S. Bank of Washington has authorized my clients to act as their agent in curing the default on a forfeiture you are handling. I further understand that you have refused to accept the cure of the default which should prevent the forfeiture.
>
> In light of these circumstances, please be advised that any attempt to follow through on the forfeiture and refuse the tendered cure will result in litigation against both you and your clients.

Tweet then tried to reach Aspinwall, but he was out of the office. Tweet asked Aspinwall's secretary, Helen Zatarain, to call Verzani and tell him that the Tweets were acting as U.S. Bank's agents. Zatarain refused.

Verzani also attempted to reach U.S. Bank officials. He, too, ended up speaking with Zatarain. Verzani asked Zatarain whether a deed conveying the subject property to the Tweets had been executed; Zatarain replied that the Tweets and the bank had reached an agreement, but the agreement was strictly verbal.

After these communications, Lonnie returned to Verzani's office and again offered to cure the default. Verzani still refused the offer and ordered Lonnie out of his office. Two days later, on August 23, 1989, Verzani caused the declaration of forfeiture to be recorded.

Tweet still wanted the property. At his request, on September 6, 1989, Aspinwall sent a letter to Verzani saying that T&R Property Management, Inc., had a limited agency to tender payment to cure the default on behalf of U.S. Bank, and that the authorization was effective on August 21, 1989. In October 1989, Tweet, acting on behalf of NCMI, and U.S. Bank officials executed the written documents memorializing their August 1989 agreement, as well as a quitclaim deed from U.S. Bank to NCMI. In return for the conveyance, NCMI paid U.S. Bank $15,000.

NCMI then filed this action to set aside the forfeiture. After a bench trial, the court dismissed NCMI's action. Pursuant to the 1976 real estate contract, the trial court awarded the Dunnings attorney fees and costs incurred in opposing NCMI's action, as well as fees and costs incurred in conducting the forfeiture. This appeal followed.

STATEMENT OF REASON FOR REJECTING TENDER

In its first assignment of error, NCMI urges this court to adopt a rule that a contract vendor waives an objection to a tendered cure for a contract forfeiture if the vendor fails to specify the grounds for the objection to the tendering party. Then, NCMI argues, this rule should be applied here so as to preclude the Dunnings from asserting that the Tweets were without authority to tender the cure. While the rule urged by NCMI is a correct statement of the law, for two reasons it is not a basis for reversal in this case.

NCMI's claim that Verzani did not advise it of the nature of his objection to its tender is not supported by the record. It is clear from both Lonnie's and Verzani's testimony that Verzani told Lonnie he was refusing the tender because Lonnie had no documents evidencing his claimed right to tender a cure. This explanation was sufficient.

As a general rule "an objection to a tender must, to be available to the creditor, be made in good time, and . . . the grounds of objection must be specified." 74 Am. Jur. 2d *Tender* § 10, at 551-52 (1974); *see also Henry Broderick, Inc. v. Baker*, 151 Wash. 1, 11-12, 274 P. 722 (1929) (acknowledging probable validity of rule that objection to tender on certain grounds must be made at time of tender or be waived); *Gunby v. Ingram*, 57 Wash. 97, 100, 106 P. 495 (1910) (objection to character of money tendered waived absent timely objection). When the objection is that the tendering party provided no proof of the right to tender, it is enough to avoid a waiver that "proof of . . . authority is called for at the time of the tender." 86 C.J.S.

*Tender* § 38, at 577 (1954). This is precisely what Verzani did. Indeed, Verzani went beyond this requirement and called U.S. Bank to verify that no written document authorized the Tweets to tender a cure for the bank's default.

### AGENCY RELATIONSHIP

NCMI next contends that the trial court erred in ruling that the Tweets were not U.S. Bank's authorized agents on August 21, 1989, and that Verzani was therefore not required to accept their cure. Its arguments are unpersuasive.

■ Individuals and entities permitted to cure a real estate contract default are limited by statute. Under RCW 61.30.090(2), only those entitled to notice of intent to forfeit under RCW 61.30, and any guarantor of or surety for the buyer's performance of the contract, may make such a cure.[1] Additionally, cure can be made by an authorized agent of one of these parties, so long as the creditor knows, or has an opportunity to assure itself, of the agent's authority. 74 Am. Jur. 2d *Tender* § 12 (1974).

Tweet argued to the trial court that Verzani was required to accept his tender because he was U.S. Bank's authorized agent on the August 21 cure date. The trial

---

[1]RCW 61.30.090(2) provides in relevant part:

All persons described in RCW 61.30.040 (1) and (2), regardless of whether given the notice of intent to forfeit, and any guarantor of or any surety for the purchaser's performance may cure the default. These persons may cure the default at any time before expiration of the time for cure and may act alone or in any combination.

RCW 61.30.040(1) requires notice to be given to "each purchaser last known to the seller or the seller's agent or attorney . . . and to each person who, at the time the notice of intent to forfeit is recorded, is the last holder of record of a purchaser's interest." RCW 61.30.040(2) requires notice to be given to holders of any interest in or lien upon the subject property, and all reasonably discoverable persons occupying the property.

Because RCW 61.30.090 defines so narrowly the persons who may cure a default on a real estate contract, NCMI's reliance on cases from other jurisdictions which it characterizes as holding that tender can be made by persons with an interest in the consequences of a tender, or even strangers to the debt, are inapposite. *See, e.g., Walthour-Flake Co. v. Brown*, 228 Ark. 307, 307 S.W.2d 215, 219 (1957); *Mahler v. Newbaur*, 32 Cal. 168 (1867).

court found the evidence insufficient to support this assertion, and entered findings that, before August 22, 1989, Aspinwall and Tweet had no discussion of and reached no agreement about an agency relationship. The evidence supports these findings.

The trial court focused on August 22, because on that date, Tweet had a telephone conversation with Aspinwall. Aspinwall's notes from that conversation provide:

> We never discussed that they [the Tweets] were our agent in this transaction. He [Tweet] again was told that the idea to cure was his idea and that if all the necessary documents were signed and monies paid we would convey any interest we have in the property to him.

Aspinwall's trial testimony was in accord with these notes. He said he did not discuss agency with Tweet until the day after Verzani rejected NCMI's cure because neither he nor Tweet anticipated any trouble with having the cure accepted. Tweet did not dispute or rebut this testimony. Given this evidence, we uphold the court's challenged findings. *E.g., Morgan v. Prudential Ins. Co.*, 86 Wn.2d 432, 437, 545 P.2d 1193 (1976) (findings of fact supported by substantial evidence will be upheld on appeal).

NCMI next asserts that despite the absence of any discussion between Tweet and Aspinwall about agency, an agency relationship existed because U.S. Bank authorized it to tender cure to Verzani. We reject this assertion, too. Nothing in the record indicates that Aspinwall ever authorized Tweet to cure the default on the bank's behalf. Instead, Aspinwall's notes state that when Tweet told Aspinwall that he would cure the default, Aspinwall said "that was his business". In other words, any authorization Aspinwall gave was for NCMI/Tweet to tender a cure on its own behalf, not on behalf of U.S. Bank. This was not a grant of authority which required Verzani to accept the tendered cure since, under RCW 61.30.090, NCMI/Tweet

would only have been entitled to cure if it acted on behalf of the bank.

■ Lastly, NCMI argues that because Verzani had knowledge that U.S. Bank had reached an oral agreement with Tweet, he was required to accept its tender. This argument also fails. Tweet's agreement to purchase the property from U.S. Bank was only oral. It was therefore unenforceable, and in fact was little more than an expectancy. *See generally* RCW 64.04.010 (every conveyance of real estate or interest therein must be by deed). This was insufficient to bring Tweet and NCMI within the classes of persons and entities entitled to cure a default on a real estate contract.[2]

## RETROACTIVE AGENCY

NCMI next argues that the trial court should have set aside the forfeiture because 2 weeks after the cure date, U.S. Bank informed Verzani that the Tweets had been acting as its agents on the cure date. To that end, NCMI assigns error to the trial court's conclusion of law that: "The Plaintiff, the Tweets and the bank cannot retroactively create an agency."

■ A 1907 federal case is the only case located which discusses ratification of a tender. In *Forderer v. Schmidt*, 154 F. 475 (9th Cir. 1907), the court noted that it is a well-settled principle of law that a tender may be made by an authorized agent as well as by the debtor himself, and that it is also a well-settled legal principle that a ratification of an act done without authority is equivalent to a previous authority. Thus, the court concluded, a tender by a stranger to a transaction could be validated by a subsequent ratification. 154 F. at 477.

---

[2] A New York case involving rejection of tender is instructive. In *A. Bresim Corp. v. Richgold Trading Corp.*, 35 Misc. 2d 804, 231 N.Y.S.2d 237, 238 (1962), the court concluded that if, at the time tender on a corporate debt was made, the person making tender " 'expected that he would shortly be elected the president of the [corporate] plaintiff after proper meetings were held, but that he could not be sure' ", tender was properly rejected.

Significantly, however, the *Forderer* court also con-
cluded that a tender ratification must be *timely* in order
to be effective. 154 F. at 477. Although the *Forderer* court
did not discuss what constitutes a timely ratification, we
are convinced that in the case of a real estate contract
forfeiture conducted under RCW 61.30, a ratification of
tender would be timely only if made on or before the cure
date set in accord with statutory requirements. *See* RCW
61.30.070(1)(e) (cure date must be not less than 90 days
after notice of intent to forfeit is recorded); RCW 61.30-
.090(3) ("seller may, but shall not be required to, accept
tender of cure after the expiration of the time for cure").
Any later date would contravene the intent of the statute
and be commercially impractical. Here, the ratification
was made approximately 2 weeks after the cure date. It
was, therefore, untimely and ineffective.

## ATTORNEY FEES

█ NCMI's final assignment of error concerns the trial
court's entry of a judgment against it for the attorney fees
incurred by the Dunnings in connection with the forfei-
ture. NCMI contends that an award of such fees is not
allowed by the real estate contract. The Dunnings con-
ceded at oral argument that under *Powell v. Moss*, 51 Wn.
App. 530, 536-37, 754 P.2d 697, *review denied*, 111 Wn.2d
1005 (1988), these fees were improperly awarded. We
therefore reverse that part of the judgment awarding the
Dunnings attorney fees incurred in the forfeiture proceed-
ing.

## STANDING

We last consider an alternative basis for affirming the
trial court which the Dunnings raised by means of a sup-
plemental statement of authority for *Schultz v. Werelius*,
60 Wn. App. 450, 803 P.2d 1334, *review denied*, 116 Wn.2d
1027 (1991). In *Schultz*, a divided court held that an

action to set aside a real estate contract forfeiture cannot be brought by one assigned an interest in the subject property after a declaration of forfeiture was recorded. The *Schultz* court reasoned that such a party does not have standing to commence the action. 60 Wn. App. at 452-54. Under *Schultz*, NCMI would lack standing to bring this action because it did not acquire an interest in the subject property until after the Dunnings recorded their declaration of forfeiture.

Because we have rejected all of NCMI's assignments of error except those relating to attorney fees, we do not rely on *Schultz* to affirm the trial court. However, we address the case briefly so as to note our disagreement with the scope of its holding. In our opinion, the rule enunciated by the *Schultz* majority goes too far in limiting the persons who can cure to only those listed in the statute. Under *Schultz*, even a bona fide postforfeiture assignee or agent of a person or entity named in the statute could not assert a purchaser's real estate contract rights. We do not believe this harsh result was intended by the Legislature.

The judgment is affirmed, except insofar as it awards the Dunnings attorney fees incurred in the forfeiture proceeding itself. Pursuant to RCW 61.30.140(5), the Dunnings are awarded their reasonable attorney fees incurred on appeal, provided they timely comply with the requirements of RAP 18.1.

WEBSTER, A.C.J., and KENNEDY, J., concur.

After modification, further reconsideration denied September 6, 1991.

Review denied at 118 Wn.2d 1012 (1992).