**135 Nev., Advance Opinion 23**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

SATICOY BAY LLC SERIES 9050 W
WARM SPRINGS 2079,
Appellant,
vs.
NEVADA ASSOCIATION SERVICES;
JAMES P. MARKEY; AND DITECH
FINANCIAL LLC,
Respondents.

No. 74153



FILED

JUL 03 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final judgment in an action to quiet title to real property. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

*Affirmed.*

Law Offices of Michael F. Bohn, Ltd., and Michael F. Bohn, Henderson, for Appellant.

Law Office of John W. Thomson and John W. Thomson, Henderson; Messner Reeves LLP and Brigette E. Foley, Las Vegas, for Respondent James P. Markey.

Wolfe & Wyman LLP and Colt B. Dodrill, Las Vegas, for Respondent Ditech Financial LLC.

Christopher V. Yergensen, Las Vegas, for Respondent Nevada Association Services.

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

19-028439

## OPINION

By the Court, STIGLICH, J.:

In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 334 P.3d 408 (2014), this court held that NRS 116.3116(2) (2013) provided a homeowners' association (HOA) with a "superpriority" lien that, when properly foreclosed, extinguished a first deed of trust and vested title in the foreclosure sale purchaser "without equity or right of redemption," NRS 116.31166(3) (1993). In the wake of *SFR Investments*, Nevada's Legislature enacted substantial amendments to NRS Chapter 116's HOA foreclosure sale statutes, in part, by creating a statutory right for homeowners, holders of a recorded security interest, and successors in interest to redeem property within a 60-day time frame after such a sale. We are asked to consider for the first time the application of this amendment. Because we conclude that the homeowner in this matter complied with the redemption statute at issue, we affirm the district court's grant of summary judgment in favor of the homeowner.

## FACTS AND PROCEDURAL HISTORY

Appellant Saticoy Bay LLC Series 9050 W Warm Springs 2079 purchased property owned by respondent James Markey for $48,600 at an HOA foreclosure sale in November 2015. After the foreclosure sale, Nevada Association Services (NAS), the entity that conducted the sale, distributed $4,564.23 of sale proceeds to pay off the HOA lien and satisfy costs associated with the sale. It then held the remaining proceeds of the sale in its trust account. Within 60 days of the foreclosure sale, Markey notified NAS that he intended to redeem the property pursuant to Nevada's newly enacted HOA foreclosure sale redemption statute, NRS 116.31166(3)

(2015).[1] NAS in turn notified Saticoy Bay of Markey's intent to redeem, but neither NAS nor Markey provided Saticoy Bay with a certified copy of the deed on the property.

NAS provided Markey with the figures that encompassed the redemption amount. Pursuant to NRS 116.31166(3), the redemption amount is calculated as the sum of (1) the purchase price of the property at the foreclosure sale, (2) the HOA lien and costs,[2] (3) reimbursement for reasonable maintenance costs, and (4) statutory interest accumulated from the date of the HOA foreclosure sale to the date of redemption. NAS informed Markey that it would direct the remaining proceeds of the sale it held in trust toward the full redemption amount and instructed Markey to supply the remainder. Further, NAS informed Markey that as soon as he sent the remainder of the redemption amount, NAS would return to Saticoy Bay the proceeds of the sale held in trust along with the remainder of the redemption amount from Markey (together, the full redemption amount).

Markey sent the remainder of the redemption amount to NAS, and NAS sent a check to Saticoy Bay for the full redemption amount. Saticoy Bay, however, refused the check because it believed that the money had to come directly from Markey, not NAS, and because Markey could not use proceeds from the sale to redeem the property. NAS sent another check, this time in Markey's name, to Saticoy Bay on the last day of the redemption

---

[1]All ensuing references to the statutes in NRS Chapter 116 are to the 2015 versions of those statutes.

[2]Meaning, "[t]he amount of any assessment, taxes or payments toward liens which were created before the purchase and which the purchaser may have paid thereon after the purchase, and interest on such amount." NRS 116.31166(3)(a)(1).

period, but Saticoy Bay again rejected it. Respondent Ditech Financial LLC—the bank servicing the mortgage on Markey's property—also expressed interest in redeeming the property prior to Markey's notice. However, when Ditech learned of Markey's intent to redeem, it abandoned those efforts. Ditech later memorialized that position when it notified NAS that to the extent Ditech had any interest in the proceeds of the sale NAS held in its trust account, Ditech authorized Markey to use those funds to redeem the property. When Saticoy Bay sought a foreclosure deed[3] for the property, NAS refused, arguing that Markey's redemption was successful and that the foreclosure sale was terminated.

Saticoy Bay filed a complaint in the district court seeking quiet title to the property, declaratory relief, and specific performance. Ditech moved for summary judgment, which Markey joined, arguing that the plain language of NRS 116.31166(3) and (4) did not prevent unit owners from using the proceeds of an HOA foreclosure sale to exercise their redemption rights, and that it was "immaterial" that Markey did not provide a certified copy of his deed when he sought redemption. Saticoy Bay opposed and countermoved for summary judgment, arguing that Markey failed to comply with NRS 116.31166(3) because the checks came from NAS and not Markey directly, that NAS and Markey failed to comply with NRS 116.31164(7)(b), and that NRS 116.31166(4) mandated strict compliance. The district court concluded that NAS's "tender to Saticoy Bay of the full redemption amount of $50,052.16 via cashier's check on behalf of Markey immediately

---

[3]Pursuant to the redemption statute, Saticoy Bay was entitled to receive a certificate of sale after the sale took place, but it was not entitled to receive the foreclosure deed until the redemption period expired without the property being redeemed. *Compare* NRS 116.31166(2), *with* NRS 116.31166(7).

extinguished Saticoy Bay's interest in the property." It also found that "the amount, time, and manner of the tender was sufficient" to satisfy the redemption statute. Consequently, the district court granted summary judgment to Ditech and Markey, terminated the foreclosure sale, and quieted title in favor of Markey subject to Ditech's first deed of trust.

Saticoy Bay appeals from the order granting summary judgment and raises two primary arguments: (1) Markey did not comply with the HOA foreclosure sale redemption statute when he directed NAS to put the proceeds of the foreclosure sale toward redemption of the property, and (2) Markey did not comply with the notice provision of the redemption statute when he failed to produce a certified copy of the deed with his notice to redeem. Saticoy Bay argues that this failure to comply with the statutory requirements renders the redemption invalid, and therefore, the district court erred in granting summary judgment to Ditech and Markey.

## DISCUSSION

Generally, "[t]his court reviews a district court's grant of summary judgment de novo, without deference to the findings of the lower court." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Pursuant to NRCP 56(c), summary judgment is proper when no genuine issue of material fact remains and the movant "is entitled to a judgment as a matter of law." *Id.* (internal quotation omitted). And this court views the evidence in a light most favorable to the nonmoving party. *Id.* Further, issues of statutory construction are reviewed de novo. *Leven v. Frey*, 123 Nev. 399, 402, 168 P.3d 712, 714 (2007). "Similarly, whether a statute's procedural requirements must be complied with strictly or only substantially is a question of law subject to [this court's] plenary review." *Id.*

*Markey complied with the HOA foreclosure redemption provision*

In 2015, NRS Chapter 116 was amended to include NRS 116.31166(3) in order to afford property owners, holders of a recorded security interest, and successors in interest a right to redeem the properties after delinquent HOA payments result in an HOA foreclosure sale.[4] Legislative Counsel Bureau Research Division, *Policy and Program Report: Housing* 3-4 (Apr. 2016). In relevant part, the statute provides that a unit owner, holder of a recorded security interest in the unit, or successor in interest of those persons may redeem the property within 60 days after the HOA foreclosure sale "by paying: (a) [t]he purchaser the amount of his or her purchase price, with interest at the rate of 1 percent per month thereon in addition, to the time of the redemption, plus" additional fees, taxes, assessments, and liens that vary depending on the circumstances. NRS 116.31166(3).

Saticoy Bay argues that Markey did not comply with NRS 116.31166(3) because he was not permitted to use the funds held in trust by NAS—funds provided by Saticoy Bay to NAS for the foreclosure sale price— to "pay . . . [t]he purchaser the amount of his or her purchase price" to redeem the property. NRS 116.31166(3). In furtherance of this argument, Saticoy Bay looks to NRS 116.31164(7), which states:

> 7. *After the sale*, the person conducting the sale *shall*:
> (a) Comply with the provisions of subsection 2 of NRS 116.31166; and

---

[4]The redemption statute is effective only as to foreclosure sales that occurred after October 1, 2015. *See* 2015 Nev. Stat., ch. 266, §§ 6, 9, at 1342, 1349. The HOA foreclosure sale here occurred on November 20, 2015.

(b) Apply the proceeds of the sale for the following purposes *in the following order*:

(1) The reasonable expenses of sale;

(2) The reasonable expenses of securing possession before sale, holding, maintaining, and preparing the unit for sale, including payment of taxes and other governmental charges, premiums on hazard and liability insurance, and, to the extent provided for by the declaration, reasonable attorney's fees and other legal expenses incurred by the association;

(3) Satisfaction of the association's lien;

*(4) Satisfaction in the order of priority of any subordinate claim of record; and*

*(5) Remittance of any excess to the unit's owner.*

NRS 116.31164(7) (emphases added). Saticoy Bay argues that after the foreclosure sale, NAS was obligated to distribute the proceeds of the sale immediately according to the distribution order in NRS 116.31164(7). Given the distribution order and that a deed of trust encumbered the property, Saticoy Bay argues the proceeds should have been distributed immediately to Ditech, the servicer for the deed of trust beneficiary. *See* NRS 116.31164(7)(b)(4)-(5). Because, on behalf of Markey, NAS directed the remaining proceeds of the sale back to Saticoy Bay to satisfy the redemption and not toward the order of distribution, Saticoy Bay claims NAS and Markey improperly bypassed NRS 116.31164(7)(b)(4).

Reviewing Saticoy Bay's argument de novo as it presents issues of statutory interpretation, *Zohar v. Zbiegien*, 130 Nev. 733, 737, 334 P.3d 402, 405 (2014), we first look to the statute's plain language to decipher legislative intent. *See Robert E. v. Justice Court*, 99 Nev. 443, 445, 664 P.2d

957, 959 (1983). If the statute's language is clear and unambiguous, we do not look beyond it. *Id.*

As an initial matter, NRS 116.31164(7) contains more than an order of distribution provision. Indeed, subsection (7)(a) directs the person conducting the sale, here NAS, to also comply with NRS 116.31166(2) "[a]fter the sale." NRS 116.31164(7)(a). NRS 116.31166(2) in turn directs NAS to provide the purchaser, here Saticoy Bay, with a certificate of sale and, among other things, "[a] statement that the unit is subject to redemption." NRS 116.31166(2)(a)(4). Receipt of such certificate of sale in exchange for the purchase price provides purchasers with a recorded interest in the property until the redemption period expires. *See* NRS 116.31166(2)(b); NRS 116.31166(7). "After the sale," the person conducting the sale must also comply with NRS 116.31164(7)(b) and distribute the proceeds of the sale in a particular order. This distribution begins with the "reasonable expenses of [the] sale," expenses associated with preparing the unit for sale, and satisfaction of the HOA's lien, and concludes with satisfying claims of record on the unit and remitting any excess to the prior unit owner. *See* NRS 116.31164(7)(b).

We conclude that NAS complied with the plain language of these provisions, whether or not it explicitly invoked the statute.[5] After Saticoy Bay tendered the $48,600 purchase price at the HOA foreclosure sale, NAS distributed $4,564.23 pursuant to NRS 116.31164(7)(b)(1)-(3) to pay off the HOA lien and costs associated with the sale. It was for this

[5]Saticoy Bay does not argue on appeal that a certificate of sale was not delivered pursuant to NRS 116.31166(2), and the record contains a certificate of foreclosure sale subject to redemption that was recorded on November 23, 2015.

reason that NAS only held $44,035.77 in trust—it had not yet distributed the remainder of the proceeds of the sale pursuant to NRS 116.31164(7)(b)(4)-(5).

This court agrees with Saticoy Bay that the statute required NAS to distribute the proceeds of the sale to Ditech immediately following the sale, however, Ditech's receipt or non-receipt of the proceeds is not for Saticoy Bay to dispute. Critically, the relevant provisions are silent in terms of granting an HOA foreclosure sale purchaser authority to direct how the proceeds are distributed. And Saticoy Bay has not identified any language in the statute that gives it such authority. Rather, the statute explicitly places responsibility on *the person conducting the sale* (here, NAS) to distribute the proceeds of the sale pursuant to NRS 116.31164(7)(b). Absent any such authorization to the purchaser, common sense dictates that Saticoy Bay does not have such authority. In this, Saticoy Bay errs by continuing to characterize the purchase price funds as "its" money. Indeed, once Saticoy Bay received the certificate of sale, it received all it was entitled to at that time under the redemption statute—an interest in the property. Therefore, whether the proceeds of the sale must be distributed toward a subordinate claim of record pursuant to subsection 4, such as that of Ditech here, or to Markey as remittance of any excess proceeds pursuant to subsection 5, is not for Saticoy Bay to assert because those funds no longer belong to Saticoy Bay.[6] *See Beazer Homes Holding Corp. v. Eighth*

---

[6]Similarly, Saticoy Bay lacks standing to assert its alternative argument that NAS was required to release the proceeds of the sale to Markey after the sale regardless of NRS 116.31164(7)(b)'s distribution order and only then would Markey be free to submit the redemption payment personally to Saticoy Bay using the funds. *See Beazer Homes Holding Corp.*, 128 Nev. at 731, 291 P.3d at 133. In any event, Saticoy Bay rejected a check

SUPREME COURT
OF
NEVADA

(O) 1947A

*Judicial Dist. Court*, 128 Nev. 723, 731, 291 P.3d 128, 133 (2012) ("[A] party generally has standing to assert only its own rights and cannot raise the claims of a third party not before the court."); *see also Chapman v. Deutsche Bank Nat'l Tr. Co.*, 129 Nev. 314, 318, 302 P.3d 1103, 1106 (2013) ("[E]ach party must plead and prove his or her own claim to the property in question." (internal quotation omitted)). Rather, that argument is for Ditech to make.

Here, however, the record demonstrates that Ditech authorized NAS to use any sale proceeds Ditech may have had a superior interest in under NRS 116.31164(7)(b)(4) for the benefit of Markey to redeem. Simply put, Ditech waived the very argument Saticoy Bay attempts to assert, and under the unique circumstances of this case, Markey was entitled to use the excess proceeds of the sale to redeem the property.[7] Specifically, after receiving the fees from Markey, NAS tendered a check for a total of $50,052.16 to Saticoy Bay before the redemption period expired. That sum

---

coming "from" Markey when NAS sent the second check in his name. *Forderer v. Schmidt*, 154 F. 475, 477 (9th Cir. 1907) (explaining that tender made by a third party at a debtor's request is sufficient tender).

[7]Saticoy Bay argues that Ditech was not the servicer of the loan at the time of the redemption period because the assignment of the deed of trust from Quicken Loans (the original owner of the loan) to Ditech was not recorded until April 2016. It argues that because Ditech was not the servicer when Ditech authorized Markey to use any funds, Ditech did not have the authority to make such authorization. However, Saticoy Bay waived the right to argue this issue because Saticoy Bay failed to raise it below. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

included the return of the $48,600 purchase price (less the $4,564.23 HOA lien and costs associated with the sale), as well as $6,016.39 tendered by Markey for the above-mentioned lien and costs and expenses.[8] Therefore, Saticoy Bay received what NRS 116.31166(3) requires if the homeowner chooses to redeem.

In sum, we conclude that in light of Ditech having allowed Markey to use sale proceeds to which Ditech was otherwise entitled, Markey complied with the redemption provision when he tendered the statutorily mandated fees and costs described above[9] and Saticoy Bay received all to which it was entitled pursuant to the redemption statute.[10]

---

[8]Saticoy Bay does not reasonably challenge that the checks were sent or received. Rather, Saticoy Bay merely argues that the checks are not included in the record on appeal. However, the record does contain emails from Saticoy Bay's counsel to NAS's counsel dated January 15, 2016, where Saticoy Bay references the January 15 check that was delivered by NAS. Further, in a January 20 email from NAS's counsel to Saticoy Bay's counsel, NAS's counsel explained that the January 19 check had been returned by Saticoy Bay's office that evening.

[9]We further conclude that NAS was permitted to tender the redemption amount on Markey's behalf. It is well-settled that tender "need not be made by [a debtor] personally. If made by a third person at his request it is sufficient . . . ." *Forderer v. Schmidt*, 154 F. 475, 477 (9th Cir. 1907) (quoting 2 Parsons on Contract 639 (9th ed.)); *see also* NRS 116.1108 (stating that supplemental general principles of law are applicable to NRS Chapter 116); Restatement (Third) of Prop.: Mortgages § 6.4(a), (e) & cmt. a (Am. Law Inst. 1997) (explaining that the full payment of a mortgage by a nonassuming grantee nevertheless extinguishes the mortgage).

[10]Saticoy Bay also argues that if Markey and Ditech claim that excess proceeds of the sale could be used to redeem the property, they would therefore be estopped from attacking the validity of the sale. However, we need not reach this issue, as Markey's redemption does not attack the validity of the sale.

*Markey substantially complied with the HOA foreclosure sale notice of redemption provision*

The redemption statute also includes a notice requirement. Under NRS 116.31166(4), a unit owner is obligated to provide notice of redemption to the person who conducted the HOA foreclosure sale—here, NAS—as well as the person who purchased the property at the sale—here, Saticoy Bay. NRS 116.31166(4). Where, as here, the unit owner is redeeming the unit, the notice of redemption "must" be accompanied by "a certified copy of the deed to the unit . . . ." NRS 116.31166(4)(a). Markey did not provide a certified copy of his deed in conjunction with his redemption notice.

Saticoy Bay argues that because the redemption statute's notice provision includes the word "must," strict compliance with the statute is required and Markey failed to comply when he did not provide a certified copy of the deed, which rendered the redemption invalid. *See* NRS 116.31166(4). It also argues that NRS 116.31166(4) mandates strict compliance in order to give "each sentence, phrase, and word" of the subsection independent meaning. *Bd. of Cty. Comm'rs of Clark Cty. v. CMC of Nev., Inc.*, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983). Further, Saticoy Bay argues that because this court previously held that a statute requiring the provision of a certified copy of a deed of trust warrants strict compliance in the foreclosure *mediation* context, the same should be required in the HOA foreclosure *redemption* context.

"To determine whether a statute and rule require strict compliance or substantial compliance, this court looks at the language used and policy and equity considerations." *Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. 470, 475-76, 255 P.3d 1275, 1278 (2011). "In so doing, [this court] examine[s] whether the purpose of the statute or rule can be

adequately served in a manner other than by technical compliance with the statutory or rule language." *Id.* at 476, 255 P.3d at 1278. This court has recognized as a "general tenet that 'time and manner' requirements are strictly construed, whereas substantial compliance may be sufficient for 'form and content' requirements." *Leven*, 123 Nev. at 408, 168 P.3d at 718. Moreover, "[s]ubstantial compliance may be sufficient to avoid harsh, unfair[,] or absurd consequences." *Leyva*, 127 Nev. at 475, 255 P.3d at 1278 (internal quotation omitted). Substantial compliance requires that a party (1) have actual knowledge, and (2) not suffer prejudice. *Hardy Cos., Inc. v. SNMARK, LLC*, 126 Nev. 528, 536, 245 P.3d 1149, 1155 (2010). In the context of NRS 116.31166(4), actual knowledge entails knowledge of the unit owner's intent to redeem and knowledge of the unit owner's authority to redeem.

To be sure, in the foreclosure mediation context, we have held that the statutory requirement to produce a certified copy of a deed of trust mandates strict compliance (analyzing the requirements of NRS 107.086(5)-(6)); *Leyva*, 127 Nev. at 476, 255 P.3d at 1279; *Pasillas v. HSBC Bank USA*, 127 Nev. 462, 465-67, 255 P.3d 1281, 1284-85 (2011). The *Leyva* court reasoned that strict compliance was required because NRS 107.086(5) states that the beneficiary of the deed of trust (i.e., lender) "shall" bring the deed of trust to the mediation. *Leyva*, 127 Nev. at 476, 255 P.3d at 1279; *see also* FMR 13.7(a). Also, that "[t]he legislative intent behind requiring a party to produce the assignments of the deed of trust . . . is to ensure that whoever is foreclosing actually owns the note." *Leyva*, 127 Nev. at 476, 255 P.3d at 1279 (internal quotations omitted). Indeed, in *Leyva*, the bank attempting to participate in the mediation was not the original named beneficiary on the deed of trust and did not provide a written assignment

Supreme Court
OF
Nevada

(O) 1947A

13

but was nonetheless attempting to foreclose on the property. *Id.* Evidence of the identity of the deed of trust beneficiary was therefore crucial to ensuring that the bank was authorized to foreclose on the property, so much so that in the foreclosure mediation context, a foreclosing party's failure to strictly comply with the statute and "bring the required documents to the mediation is a *sanctionable offense* under NRS 107.086 and the [Foreclosure Mediation Rules]." *Id.* at 480, 255 P.3d at 1281 (emphasis added).

Conversely, no equivalent ramification is evident in NRS Chapter 116 when a certified copy of a deed is not provided during redemption. Rather, the remedies suggest strict compliance is not necessary in that "[t]he remedies provided by [NRS Chapter 116] must be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed." NRS 116.1114. In this sense, NRS 107.086 and the applicable Foreclosure Mediation Rules are construed against the lenders (i.e., beneficiaries of the deed of trust) attempting to foreclose on a home, *see Leyva*, 127 Nev. at 476, 255 P.3d at 1279 (concluding that "NRS 107.086 and the FMRs necessitate strict compliance" to adequately serve the purpose of the statute and rules), while NRS Chapter 116's redemption statute is construed in favor of the unit owner attempting to redeem his or her property. *See* Hearing on S.B. 306 Before the Senate Judiciary Comm., 78th Leg. (Nev., Apr. 7, 2015) (statement of Senator Aaron D. Ford); *see also* Hearing on S.B. 306 Before the Assembly Judiciary Comm., 78th Leg. (Nev., Apr. 28, 2015) (statement of Jonathan Gedde, Chairman, Board of Governors, Nevada Mortgage Lenders Association) ("Nevada homeowners benefit by the changes made in this bill as well. Taking away someone's property that is worth hundreds of thousands of dollars is not a matter that should be taken lightly and there

are quite a few consumer protections in this bill."). Further, if a unit owner substantially complies with the redemption statute's notice provision, the purchaser is "put in as good a position as if the other party had fully performed," NRS 116.1114, because a successful redemption results in the purchaser receiving repayment of the purchase price, reimbursement for other costs and assessments, and also payment of monthly interest on the purchase price. NRS 116.31166(3). We conclude that substantial compliance with NRS Chapter 116's redemption statute's notice requirement is sufficient because "the purpose of [NRS 116.31166(4)] can be adequately served in a manner other than by technical compliance with the statutory or rule language." *Leyva*, 127 Nev. at 476, 255 P.3d at 1278.

Turning to the case before us, Saticoy Bay had actual knowledge of Markey's intent to redeem the property when NAS emailed Saticoy Bay of Markey's intent. Further, Saticoy Bay does not argue on appeal that Markey is not the unit owner of the property; rather Saticoy Bay merely argues that Markey did not strictly comply with NRS 116.31166(4) by providing a certified copy of the deed. Saticoy Bay also has not demonstrated that it was prejudiced by Markey's failure to provide a certified copy of the deed. First, the only time Saticoy Bay communicated any objection to Markey's notice of redemption and the lack of a certified copy of the deed was the day after the 60-day redemption period expired, despite the fact that Saticoy Bay had been communicating with NAS about Markey's intent to redeem for almost a month. Second, Saticoy Bay failed to articulate how the lack of a certified copy of the deed caused it harm,

except that it was unable to frustrate Markey's redemption on the ground that he did not strictly comply with the statute. This objection too is unavailing, as successful redemption by Markey resulted in Saticoy Bay receiving all of the benefits of redemption pursuant to NRS 116.31166, namely the payment of its purchase price and interest at the rate of one percent per month. Accordingly, we conclude that Markey substantially complied with NRS 116.31166(4) and that his substantial compliance was sufficient to satisfy the statute's requirements. *Hardy Cos.*, 126 Nev. at 536, 245 P.3d at 1155.

Based on the above, we find no error in the district court's ruling below, and we affirm the district court's summary judgment.

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Silver

